859 So.2d 67 (2003)
Charles WOPARA
v.
STATE EMPLOYEES' GROUP BENEFITS PROGRAM.
No. 2002 CA 2641.
Court of Appeal of Louisiana, First Circuit.
July 2, 2003.
*68 Dele A. Adebamiji, Baton Rouge, Counsel for Plaintiff/Appellant Charles Wopara.
William A. Norfolk, Baton Rouge, Counsel for Defendant/Appellee State Employees' Group Benefits Program.
Robert R. Boland, Jr., Baton Rouge, Counsel for Allen H. Reynolds, Director, Department of State Civil Service.
Before: KUHN, DOWNING and GAIDRY, JJ.
DOWNING, J.
Charles Wopara, a permanent-status civil service employee with the Office of Group Benefits (OGB), appeals the dismissal of his appeal to the Louisiana State Civil Service Commission (Commission). For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Charles Wopara is employed with OGB as a Group Benefit Specialist 2. On December 5, 2001, OGB advised Wopara that it was considering taking disciplinary action against him, in the form of a suspension without pay for up to and including five days, for failure to report a potential conflict of interest as required by OGB Policy 28.
Wopara responded, denying the OGB charges. After considering his response, the OGB advised on December 19, 2001, that it had determined to go forward with disciplinary action in the form of a reduction in pay equivalent to a five-day suspension without pay. As a consequence, Wopara's pay was reduced from $1,365 to $1,138 bi-weekly for a period of six weeks.
On January 11, 2002, Wopara appealed the disciplinary action to the State Civil Service Commission. The Referee appointed by the Commission held a public hearing on April 25, 2002, to determine the merits of Wopara's appeal. After considering the testimony and exhibits introduced by OGB and Wopara, the Referee rendered a decision on June 18, 2002, finding that OGB had cause to discipline Wopara, and specifically concluding that Wopara's ownership interest in several entities constituted a potential conflict of interest or the appearance of same, such that he should have reported his financial interest in those entities in compliance with OGB policies and procedures. Wopara applied for a review of the Referee's decision, which was denied on September 16, 2002. Accordingly, the decision of the Referee became the decision of the Commission.
Wopara now appeals to this court, raising a single assignment of error, as follows:
The action of the Commission was contrary to the law and evidence and the Commission erred in finding that Charles Wopara failed to disclose his financial interests in New Era Electronic Medical Claims Processing, Inc. and Faith, LLC DBA Capital City Rehabilitation Services.

APPLICABLE LAW
Article X of the Louisiana Constitution of 1974 establishes the State Civil Service and governs the State Civil Service Commission. Article X, § 12 places exclusive original jurisdiction to adjudicate removal and disciplinary cases in the Commission, with the attendant power to appoint referees to hear and decide cases. Further, that Section allows the classified employee the right to an administrative appeal from the Commission-appointed referee's decision to the Commission itself, with the right to judicial review in the circuit courts of appeal. Article X, § 8 prohibits disciplinary action against classified employees, except for cause, prohibits *69 discrimination against a classified employee, grants to employees the right to bring an appeal concerning such actions to the Commission, and sets out the burden of proof for each type of action. Louisiana Department of Agriculture and Forestry v. Sumrall, 98-1587, pp. 1-2 (La.3/2/99), 728 So.2d 1254, 1256-57.
Legal cause sufficient to justify disciplining an employee has been defined as conduct that impairs the efficiency of the public service and bears a real and substantial relation to efficient and orderly operation of the public service in which the employee is engaged. Thornton v. DHHR, 394 So.2d 1269, 1271 (La.App. 1 Cir.1981). The burden of proof, which is on the appointing authority, requires that the appointing authority show by a preponderance of the evidence that the employee's conduct did, in fact, impair the efficiency and operation of the public service. A preponderance of the evidence means evidence which is of greater weight than that which is offered in opposition thereto. And, proof is sufficient to constitute a preponderance when, taken as a whole, it shows the fact of causation sought to be proved as more probable than not. See generally La. Const. art. X, § 8(A); Civil Service Rule 13.19(c). Thornton, 394 So.2d at 1271.
In Bannister v. Department of Streets, 95-0404 (La.1/16/96), 666 So.2d 641, the Louisiana Supreme Court set forth the standard of review in civil service disciplinary cases, as follows:
In civil service disciplinary cases, an appellate court is presented with a multifaceted review function. First, as in other civil matters, deference will be given to the factual conclusions of the Commission. Hence, in deciding whether to affirm the Commission's factual findings, a reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review....
Second, in evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. "Arbitrary or capricious" means the absence of a rational basis for the action taken.
Employees with permanent status in the classified civil service may be disciplined only for cause expressed in writing. "Cause" for the dismissal of such a person includes conduct prejudicial to the public service involved or detrimental to its efficient operation. Stated differently, disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the "efficient operation" of the public service. (Citations omitted.)
Bannister, 95-0404 at p. 8, 666 So.2d at 647.
The two-part test for the appellate review of facts is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). An appellate court may not set aside a trial court's factual finding unless, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of *70 fact should not be disturbed upon review where conflict exists in the testimony. Stobart, 617 So.2d at 882. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In evaluating whether the Commission's determination that disciplinary action taken by the Department was based on legal cause and commensurate with the infraction, the reviewing court should not modify the Commission's order unless it was arbitrary, capricious, or characterized by abuse of discretion. Bannister, 95-0404 at p. 8, 666 So.2d at 647.
Measured by these standards, we find no error in the factual findings of the Referee adopted by the Commission. Moreover, for the reasons that follow, we find no abuse of discretion or capriciousness in the Commission's determination that the disciplinary action imposed was appropriate and commensurate with the infraction.

FACTUAL FINDINGS OF THE COMMISSION
The Referee made the following findings of fact, as stated in her decision, filed June 18, 2002:
1. OGB processes claims and pays health care providers for services rendered to its members. Part of Mr. Wopara's duties is to process and pay claims sent to OGB by the providers.
2. On February 14, 2000, OGB instituted Permanent Policy Number 28, requiring OGB employees to report conflicts of interest and potential conflicts of interest. Mr. Wopara signed a Policy Receipt Acknowledgment on April 14, 2000, indicating that he had received and read Policy 28 and agreed to comply with the procedures and guidelines.
3. Policy 28 defines a conflict of interest as a situation in which financial or other personal considerations may compromise, involve the potential for compromising, or may have the appearance of compromising an elected official or public employee's objectivity in meeting duties or responsibilities.
4. In furtherance of the policy, OGB requires that its employees provide financial disclosure statements and fill out a State Employees Group Benefits Program ("SEGBP") (footnote omitted) Certificate of Assurance. The certificate gives the employee three options: 1 No conflict or appearance of conflict exists; 2 A conflict exists or may exist; 3 An appearance of conflict exists or may exist. The employee is required to indicate on the certificate which option is applicable.
5. Policy 28 provides that the Internal Audit Division ("IAD") will review the employee disclosures. IAD then makes a determination whether the financial interest could directly affect the employee in the performance of his/her duties. If a conflict appears to exist, the Internal Audit Director notifies the employee and the Chief Executive Officer or Chief Operating Officer. The Audit Director, with appropriate consultation, designs and administers oversight or other mechanisms appropriate to manage the specific conflict.
6. On June 7, 2000, Mr. Wopara signed a Certificate of Assurance form indicating that: "No conflict or appearance of conflict exists."
7. On June 8, 2001, Mr. Wopara signed a Financial Disclosure Report. Part I of this form directed Mr. Wopara *71 to: "Report for you, your spouse, and dependent children, any relationship, financial or otherwise, existing or occurring during the period of July 1, 1999, through June 30, 2000, that may compromise, have potential for compromise, or may have the appearance of compromising your objectivity in the performance of yours [sic] duties and responsibilities for SEGBP." In all sections pertaining to this directive, Mr. Wopara wrote "N/A."
8. On June 25, 2001, and July 13, 2001, Mr. Wopara signed a Certificate of Assurance form indicating "No conflict or appearance of conflict exists."
9. On July 13, 2001, Mr. Wopara signed a Financial Disclosure Report. Part I.2(A) of this form required Mr. Wopara to describe any relationship and/or conflict. In this section: "None that will compromise my objectivity." In response to the other sections, Mr. Wopara wrote "N/A."
10. On October 1, 2001, Mr. Wopara signed a financial Disclosure Report. He indicated on the form that he had interests in Faith, LLC DBA as Capitol City Rehabilitation Service, New ERA Electronic Medical Claims Processing, Inc., Five Point Entertainment Group, Inc. and that he is part owner of Capitol City Rehabilitation Service.
11. Mr. Wopara and his wife have been joint owners of New ERA Electronic Medical Claims Processing, Inc. since December 18, 1995. The company provides electronic medical billing services for eleven health care providers, seven of whom have EPO and/or PPO contracts with the Office of Group Benefits. Mr. Wopara did not disclose his or his wife's financial interest in this company until October 1, 2001.
12. Mr. Wopara has been part owner and part time employee of Faith, LLC DBA Capitol City Rehabilitation Service since June 30, 2001. On August 1, 2001, he filed a W-9 form with the Internal Revenue Service requesting an identification number and certification for Faith, LLC DBA Capitol City Rehabilitation Service.
13. Faith, LLC DBA Capitol City Rehabilitation Service represents Occupational and Physical Therapists and both are providers in the EPO/ PPO network of OGB. Mr. Wopara did not disclose his financial interest in this company until October 1, 2001.
14. Five Point Entertainment Group does not represent any health care providers. His interest in this enterprise was not a conflict of interest.
15. Mr. Wopara's companies never submitted any claims to OGB for payment for any medical provider that his companies represented.

DISCUSSION
On appeal, Wopara does not dispute that he signed the documents referred to in the Referee's findings of fact. The only fact finding with which Wopara quarrels is that he had a financial interest in Faith, LLC doing business as Capital City Rehabilitation Services ("Faith"). Wopara testified that he had only an oral offer by the owner of the business to become an owner, and he signed OGB forms indicating an ownership interest because he anticipated acquiring an interest. He testified that this transfer never occurred and he never acquired an interest in Faith. According to *72 Wopara, his only connection with Faith is that he prepared its tax returns and requested IRS documentation for it in that capacity.
It is clear from the Referee's findings of fact that she rejected Wopara's self-serving denial of an ownership interest in Faith, which denial contradicted the Financial Disclosure Report Wopara signed in October 2001. The Referee had the opportunity to hear Wopara's testimony and observe his demeanor. We will not disturb a finding of fact based on an evaluation of the credibility of a witness where it is not manifestly erroneous. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Samuel v. Baton Rouge General Medical Center, 99-1148, p. 5 (La. App. 1 Cir. 10/2/00), 798 So.2d 126, 130. We have read the testimony of the witnesses at the hearing and have reviewed the documentary evidence submitted. We conclude there was evidentiary support for the challenged finding of the Referee and, based on the entire record, that finding was not clearly wrong.
Moreover, even if we were to accept Wopara's contention that he had no ownership interest in Faith, it is undisputed that he and his wife were co-owners of New ERA Electronic Medical Claims Processing, Inc. ("New ERA.") Wopara filed OGB forms indicating that he had no real or apparent conflict of interest to disclose despite his ownership interest in New ERA. He also failed to disclose his interest in New ERA when he filed Financial Disclosure Forms. Thus, the record supports the disciplinary action taken based on his ownership interest in New ERA alone.
Wopara further contends that the Referee erred in determining that his failure to disclose his interest in new ERA justified disciplinary action. He insists that the OGB did not bear its burden of proving that he had either a real or potential conflict of interest or that his financial interests gave the appearance of a conflict of interest, such that there was cause for the disciplinary action. We do not agree.
Although Wopara may never have adjusted claims of entities that New ERA did billing for, several of his company's clients were on the OGB provider list and had submitted claims to OGB. Roslyn Johnson, the OGB Internal Audit Director, in discussing the relationship of Wopara, New ERA, and the health care providers serviced by New ERA, explained:
Because these are medical providers and they are submitting claims and Charles is the claims examiner that could possibly receive one of those claims or processes, that could compromise his objectivity in processing that claim. That is why I consider that to be a conflict.
Wopara insisted that there was no conflict of interest because New ERA only does Medicare and Medicaid electronic billing, and that kind of billing is not adjusted by OGB. Based on the OGB definition of conflict of interest, we conclude this view of what constitutes a conflict of interest or the appearance of a conflict of interest is too narrow. Ms. Johnson explained that even though the Medicare and Medicaid billing New ERA does for its clients may not be submitted to OGB, other bills generated for those same clients (albeit not generated by New ERA) may be submitted to OGB. The fact that New ERA receives compensation from providers who submit claims to OGB, even though their claims might be submitted by an unrelated company, still has the potential or the appearance of potential to compromise Wopara's objectivity. Prior to discovering Wopara's interest in New ERA, it was possible that Wopara could be assigned to *73 adjust a claim for a provider that New ERA services. Subsequent to discovering this, OGB has devised a system whereby Wopara must report the names of all clients serviced by New ERA. A computer-generated program insures that no claims submitted on behalf of these clients will be adjusted by Wopara, whether or not the bills are generated by New ERA. This shields the OGB from criticism that its claims processors are adjusting claims for providers with which they have outside financial interests. Ms. Johnson further explained:
Well, the claimwhen you are processing a claim, you have to consider Medicaid and Medicare on some of them. Sobut, that is not why this is questioned. This is questioned because Charles could possibly pick up one of those claims. It doesn't matter whether he bills for Medicaid or Medicare. If that provider is on our network, Charles has the possibility of picking up a claim for one of those providers. I mean, he has no he can't make a decision on what provider claims he processes.... That is why he has to disclose it and the managers are supposed to monitor this. If he had disclosed this, his manager could have been told that there was a possible conflict and they could have monitored it where they would be sure he did not get a claim from one of those providers. It is not up to Charles to monitor the process. It is up to management to monitor the process.
After her investigation, Ms. Johnson informed the Deputy Undersecretary of OGB, Hubert Linceum, that she considered Wopara's relationship with New ERA as a definite conflict of interest that should have been timely disclosed. Wopara's responsibility was to disclose any interest he had, whether or not the companies ever presented a claim.
Moreover, Ms. Johnson pointed out that although New ERA may not bill for providers submitting claims to OGB at the present time, without disclosure of his interest in New ERA and the providers it does business with, OGB has no way of knowing which bills New ERA might generate and which clients it has a relationship with in order to manage the appearance of conflict. It is undisputed that Wopara did not follow the OGB policy requiring employees to disclose their interests in companies that service health care providers who look to OGB for payment of their bills. He apparently made his own decision that if New ERA did not actually submit bills on behalf of its clients to OGB, there was no conflict. If New ERA received compensation from a hospital or physician, Wopara's objectivity in adjusting bills for that provider might be affected, even though his company did not prepare the bill being adjusted. In her written opinion, the Referee noted:
Mr. Wopara does business with providers that do business with OGB. Therefore, even if no real or potential conflict of interest exists, there is an appearance of a conflict of interest. OGB Permanent Policy 28 required Mr. Wopara to report his financial interest in these companies as a potential or perceived conflict of interest.
We find no error in this conclusion of the Referee. We also agree that violation of this legitimate agency policy is sufficient cause for the imposition of discipline. See, e.g., Allen v. DHHR, Ruston State School, 426 So.2d 234, 237 (La.App. 1 Cir.1983).[1]
*74 After a thorough review of the record, we find that the Referee did not err in concluding that the disciplinary action taken in this case was based on lawful cause and that the failure of Wopara to follow the OGB policy directive bore a real and substantial relation to the efficient and orderly operation of the public service in which he was engaged. We further consider the penalty of loss of the equivalent of five days pay to be commensurate with the infraction at issue. We find no manifest error in the factual determinations made by the Referee and conclude that the decision to uphold the disciplinary action imposed was not arbitrary, capricious, or characterized by an abuse of discretion.

DECREE
For the foregoing reasons, the decision of the Commission upholding the finding of fact and conclusions of law of the Referee is affirmed. All costs of this appeal are assessed to Charles Wopara.
AFFIRMED.
KUHN, J., concurs.
NOTES
[1] Plaintiff has not attacked the substance of OGB Policy No. 28 or the OGB's right to adopt that policy.