923 So.2d 656 (2005)
Howard MARSELLUS, III
v.
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, Elayn Hunt Correctional Center.
No. 2004 CA 0860.
Court of Appeal of Louisiana, First Circuit.
September 23, 2005.
*658 Mark E. Falcon, Baton Rouge, Counsel for Plaintiff/Appellant Howard Marsellus, III.
Robert B. Barbor, Deputy General Counsel, Baton Rouge, Counsel for Defendant/Appellee Elayn Hunt Correctional Center.
Robert R. Boland, Jr., Civil Service General Counsel, Baton Rouge, Counsel for Allen H. Reynolds Director, Department of State Civil Service.
Before: WHIPPLE, GUIDRY, GAIDRY, McCLENDON, and WELCH, JJ.
GAIDRY, J.
The appellant, Howard Marsellus, III, a permanent-status civil service employee of the Louisiana Department of Public Safety and Corrections (the Department), appeals the decision of the Louisiana Civil Service Commission (the Commission), upholding his termination from employment. For the reasons which follow, we affirm the decision of the Commission in part as to the finding of legal cause for disciplinary action, but reverse its decision in part based upon our conclusion that the discipline imposed, termination, is not commensurate with the offense proven, and constitutes an abuse of discretion under the circumstances.

FACTS AND PROCEDURAL HISTORY
In July 2002, appellant was employed by the Department with the rank of Corrections Sergeant-Master, and was assigned to the Hunt Correctional Center (HCC) in St. Gabriel, Louisiana. On July 30, 2002, appellant's immediate supervisor, Lt. Terry Albright, reported to his superiors that he had observed appellant sleeping on duty on two occasions, the first during the morning of July 26, 2002, and the second during the morning of July 30, 2002. An investigation followed the violation report, and dismissal from employment was recommended. By letter dated September 16, 2002, following the conclusion of administrative review of the violations, the Department formally charged Sgt. Marsellus with violation of Rule 13(g) of its Employee Rules, and notified him that he was terminated from employment. Sgt. Marsellus then appealed the Department's action to the Commission.
The Commission's duly-appointed referee conducted a hearing on Sgt. Marsellus's appeal of the Department's action on January 24, 2003, during which testimony and evidence were presented. The matter was taken under advisement, and the referee issued her decision on January 28, 2004, denying Sgt. Marsellus's appeal, finding that the department proved cause for discipline and that the penalty of termination was commensurate with the offense. Sgt. Marsellus now appeals the Commission's decision to this court, pursuant to La. Const. art. 10, § 12.

THE COMMISSION'S FACTUAL FINDINGS
The Commission's referee made the following pertinent findings of fact, among others, in her decision:
[Master Sgt.] Marsellus has approximately 17-18 years of state service. He has not previously been disciplined.
On July 26, 2002, and July 30, 2002, Master Sgt. Marsellus was assigned to the D-1 Cellblock E and F tiers, on the 6:00 p.m. to 6:00 a.m. shift. Lt. Terry Albright was Master Sgt. Marsellus's immediate supervisor.
. . .
The inmates housed in the D-1 cellblock have discipline problems or are *659 those who are considered a threat to security. A tier Sergeant's duties consist of making rounds down each tier, checking the inmates in their cells, watching the tier orderly, making shakedowns, and keeping a log book of occurrences in his or her area. When a tier officer is not making rounds he or she is stationed at the top of the tier, outside the tier doors where he or she can observe both tiers assigned. Generally, during the hours of 2:00 a.m.-4:00 a.m., the inmates in the D-1 cellblock are locked down.
. . .
Lt. Albright testified that he observed Master Sgt. Marsellus on July 26, 2002, at approximately 3:00 a.m., for approximately one minute with his head against the wall of the interlock, eyes shut, and his mouth open. Lt. Albright testified that he woke Master Sgt. Marsellus up and removed him to the D-1 courtroom for counseling, which lasted 5-6 minutes. Lt. Albright did not get a relief for Master Sgt. Marsellus when he removed him to the D-1 courtroom. Lt. Albright did not report the incident to the supervisors on duty.
. . .
Lt. Albright testified that [on July 30, 2002] at approximately 4:00 a.m., he observed Master Sgt. Marsellus at his desk with his head and upper body bent over and his eyes closed, then the tier door opened without any indication from Master Sgt. Marsellus and Master Sgt. Marsellus woke up, stood, and went down the tier to make his rounds. Lt. Albright did not remove Master Sgt. Marsellus from his post or discuss the fact that he was asleep with him. Lt. Albright explained that he did not do so because [five] parole violators were brought in right after Master Sgt. Marsellus finished his rounds and they were busy with that. Lt. Albright did not report the incident to the supervisors on duty before he left at 6:00 a.m.
Around 5:20 p.m., on July 30, 2002, Lt. Albright notified Major Hall, Sr. [sic] at roll call that he had observed Master Sgt. Marsellus sleeping on duty during the morning hours on July 26, 2002, and on July 30, 2002.
. . .
After roll call, Lt. Albright, Major Hall, Sr., and Assistant Warden McNeil met with Master Sgt. Marsellus. Master Sgt. Marsellus denied being asleep on the morning of July 30, 2002, but told them that he "nodded off" on the morning of July 26, 2002.
Security officers who are inattentive to their duties for even a few minutes jeopardize the safety and security of staff and inmates.

ASSIGNMENTS OF ERROR
Appellant contends the Commission, through its referee, erred in the following respects:
(1) The referee erred in denying appellant's appeal based solely upon an alleged admission;
(2) Alternatively, the referee erred in failing to reduce the penalty from termination to a lesser sanction; and
(3) The referee erred in failing to grant the relief requested by appellant, including reinstatement, back pay, and attorney's fees.

STANDARD OF REVIEW
Decisions of Commission referees are subject to the same standard of appellate review as decisions of the Commission itself, being the same standard of review as that for decisions of the district courts. Usun v. LSU Health Sciences Center Medical Center of Louisiana at *660 New Orleans, 02-0295, p. 4 (La.App. 1st Cir.2/14/03), 845 So.2d 491, 494. Hence, as to the Commission referee's factual findings, the reviewing court should apply the clearly wrong or manifest error standard of review. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647. However, as to the determination of whether the disciplinary action taken is based on legal cause and commensurate with the offense, the Commission's decision should not be modified unless it is arbitrary, capricious, or characterized by abuse of discretion. Id.

DISCUSSION
Article 10, § 8(A) of the Louisiana Constitution provides that a classified employee may not be "subjected to disciplinary action except for cause expressed in writing." "Cause" sufficient for the imposition of discipline means "conduct that impairs the efficiency of the public service and bears a real and substantial relation to efficient and orderly operation of the public service in which the employee is engaged." Wopara v. State Employees' Group Benefits Program, 02-2641, p. 3 (La.App. 1st Cir.7/2/03), 859 So.2d 67, 69. The "appointing authority" (here, the Department) must prove by a preponderance of the evidence that the employee's conduct did, in fact, impair the efficiency and operation of the public service. Id., 02-2641 at p. 4, 859 So.2d at 69.
A copy of the Corrections Services Employee Manual was admitted into evidence at the hearing before the Commission's referee. Part II of the Appendix sets forth the Employee Rules. Rule 12, "Malfeasance," provides under its Paragraph (a) that "[e]ach employee must perform his duties properly and free from negligence so as to fulfill the purpose and responsibilities of his assignment." Rule 13, "MalfeasanceAggravated," sets out a very similar general requirement in its Paragraph (g): "Each employee must perform his duties so as to fulfill the purpose and responsibility of his assignment." Appellant was charged with violating Rule 13(g). Of interest is the fact that Rule 13(f) specifically provides that "[u]nauthorized sleeping on duty is forbidden," yet appellant was not charged with violation of that rule.
The Manual provides that available disciplinary penalties for violations of the rules include reassignment, reduction in pay, demotion in rank, suspension without pay for up to ninety days, and dismissal (termination), and penalties may be combined "to achieve the desired disciplinary result." The Manual further expressly provides that "[t]he severity of the penalty should be determined by the seriousness of the offense and consideration of aggravating and mitigating circumstances." Aggravating circumstances include previous rule violations, the threat or danger to public, staff, or inmate security, disruption of unit operations or activities, and willfulness of the rule violation. Mitigating circumstances include but are not limited to length of service and caliber of service.
In her decision, the referee observed that the Department presented the testimony of only one eyewitness, Lt. Albright, in support of the violations. Based upon evidence which directly contradicted his explanations for failing to immediately report the violations, the referee found that "Lt. Albright's explanations are not credible and his actions are not consistent with those of a supervisor finding a subordinate asleep on duty at a prison." The referee therefore concluded that the Department "failed to prove either incident by direct evidence." However, the referee accepted the testimony of Major Hall and Assistant Warden McNeil that Sgt. Marsellus admitted to them that he had briefly "nodded off" on July 26, 2002, and based her decision upon that admission.
*661 Sgt. Marsellus testified at the hearing in his own defense, and denied either sleeping or admitting that he had "nodded off." The referee made no express finding of lack of credibility for Sgt. Marsellus's testimony, although implicit in her acceptance of the testimony of his admission is a rejection of his denial of such admission. We accept the proposition, advanced by appellant, that the admission that he "nodded off" for "a few seconds" is not an admission that he was asleep for a minute. But we reject appellant's contention that the referee erred in finding a violation of Rule 13(g) based upon the admission. The importance of vigilance on the part of prison security officers, of course, cannot be overemphasized. And we agree with the referee's finding that prison security officers who are inattentive to their duties "for even a few minutes" create unacceptable safety risk. This does not mean, however, that a briefer period of inattentiveness by a prison security officer cannot adversely affect "the purpose and responsibility of his assignment." It was the province of the Commission, through its referee, to determine the weight to be given the admission in the administrative hearing. Evans v. DeRidder Municipal Fire and Police Civil Service Board, 01-2466, p. 10 (La.4/3/02), 815 So.2d 61, 69, cert. denied, 537 U.S. 1108, 123 S.Ct. 884, 154 L.Ed.2d 779 (2003). We conclude that the Department met its burden of proving legal cause for discipline, and that the referee's conclusion in that regard was not manifestly erroneous. Thus, appellant's first assignment of error lacks merit.
Appellant alternatively contends that the referee erred in finding the penalty of termination was commensurate with the offense proven and in failing to reduce the penalty imposed to a lesser sanction. As previously observed, our determination of this issue must be made under the "abuse of discretion" or "arbitrary or capricious" standard of review. An administrative agency's conclusion is "capricious" when it has no substantial evidence to support it. Likewise, the word "arbitrary" implies a disregard of evidence or the proper weight thereof. Sterling v. Department of Public Safety & Corrections, Louisiana State Penitentiary, 97-1960, p. 13 (La.App. 1st Cir.9/25/98), 723 So.2d 448, 455. (Emphasis supplied.)
The Department imposed the sanction of termination as appropriate based upon the written charge of Sgt. Marsellus being asleep on duty on two separate occasions. Here, however, according to the referee's own factual findings, there was no competent proof of inattentiveness by Sgt. Marsellus for more than "a few seconds" on one occasion when he "nodded off."[1] Given the circumstances of this case, this falls short of proof that Sgt. Marsellus's conduct had such "a real and substantial detrimental effect" upon the efficiency and orderly operation of HCC that the ultimate sanction of termination was warranted. See Sterling, 97-1960 at pp. 9-10, 723 So.2d at 453.[2] Thus, we find merit in appellant's second assignment of error.
After careful review of the record as a whole, given the character, content, and *662 proper weight of the evidence, we conclude that the sanction of termination constituted excessive discipline, not commensurate with the relative seriousness of the offense actually proven, and that the referee's decision to uphold that sanction was an abuse of discretion. We accordingly reverse the Commission's decision insofar as it upholds the Department's imposition of the sanction of termination, and remand this matter to the Commission for imposition of appropriate discipline, short of termination. We further order appellant to be reinstated to employment, subject to the imposition of the modified discipline to be imposed. This resolves appellant's third assignment of error.

DECREE
The decision of the Louisiana Civil Service Commission, denying the appeal of the appellant, Howard Marsellus, III, is affirmed in part as to the finding of legal cause for discipline, but reversed in part as to the finding that the penalty of termination was commensurate with the offense proven. It is ordered that the appellant be reinstated in his employment by the Department of Public Safety and Corrections, and that this matter be remanded to the Commission for determination of the appropriate discipline, short of termination, to be imposed. The costs of this appeal are assessed to the appellant, Howard Marsellus, III.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED TO THE LOUISIANA CIVIL SERVICE COMMISSION.
McCLENDON, J., dissents and assigns reasons.
McCLENDON, J., dissents.
I respectfully dissent from the result reached by the majority, as I do not find the termination in this case to be arbitrary and capricious.
NOTES
[1] In his testimony, Major Hall described appellant's responses to questions posed by Assistant Warden McNeil during their initial interview of him. He corroborated appellant's denial that he had been sleeping, but testified that appellant "responded that he may have nodded off" on July 26. In response to a question as to the duration of his "nodding off," Major Hall stated that appellant "said, `I may have nodded' and he said for a few seconds or so." Assistant Warden McNeil simply stated that appellant admitted "that he had nodded off for awhile" on July 26, and that he only interpreted that to mean that appellant was actually sleeping.
[2] See also Edwards v. Department of Corrections, L.C.I.W., 461 So.2d 678, 680-81 (La. App. 1st Cir.1984), writs denied, 463 So.2d 1319, 464 So.2d 303 (La.1985). But cf. Dent v. Department of Corrections, Louisiana Correctional Institute for Women, 413 So.2d 920 (La.App. 1st Cir.1982); Searcy v. Louisiana Department of Corrections, Louisiana State Penitentiary, 484 So.2d 773 (La.App. 1st Cir. 1986).