McClendon, j.
| ¡¡Terry Kirk, a permanent-status civil service employee, appeals the denial of his appeal by the State Civil Service Commission (Commission). For the following reasons, we affirm.
FACTUAL AND PROCEDURAL HISTORY
Mr. Kirk was employed with the Department of Health and Hospitals (DHH), Office for Citizens with Developmental Disabilities (OCDD), Pinecrest Supports and Services Center (PSSC), as a Residential Services Specialist 6, when he was demoted to a Developmentalist, effective August 13, 2012. The demotion resulted in not only a title and responsibility demotion, but also a seven percent reduction in pay. This disciplinary action was taken by DHH for the charges of interfering with an investigation, failing to preserve and disclose evidence, and failing to comply with supervisory directives.
On September 8, 2012, Mr. Kirk appealed the disciplinary action to the Commission, and on December 3, 2012, a hearing on the appeal was held before a Commission referee. On May 30, 2013, after considering the testimony and exhibits, the referee rendered a decision on the three charges, concluding that DHH proved that Mr. Kirk interfered with an ongoing investigation. Finding legal cause for discipline and finding that demotion was commensurate with the offense, the referee denied the appeal. The decision of the referee became the decision of the Commission, and Mr. Kirk appealed the Commission’s decision, asserting that it was in error.
APPLICABLE LAW
In civil service disciplinary cases, the burden of proof is on the appointing authority to prove its case by a preponderance of the evidence. However, once that burden is met and disciplinary action is imposed, the state employee bears the burden of proving that the disciplinary action taken was arbitrary or capricious. Shortess v. Department of Public Safety & Corrections, 06-1532 (La.App. 1 Cir. 5/28/08), 991 So.2d 1067,1071.
[¡¡In reviewing a Commission decision, great deference is given to the factual determinations of the Commission, and an appellate court will not overturn those determinations in the absence of clear or manifest error. Aso, when evaluating the Commission’s determination as to whether the action is commensurate with the infraction, an appellate court should not modify the Commission’s order unless it is arbitrary, capricious, or an abuse of discretion. Bannister v. Department of Streets, 95-0404 (La.1/16/96), 666 So.2d 641, 647. ‘Arbitrary or capricious” means the absence of a rational basis in the record for the action taken. Id.
Employees with permanent status in the classified civil service may be disciplined only for cause expressed in writing. LSA-Const. At. X, § 8(A). “Cause” for the discipline of such an employee includes conduct prejudicial to the public service involved or detrimental to its efficient operation. The employer must prove by a preponderance of the evidence that the employee’s conduct did, in fact, *205 impair the efficiency and operation of the public service in which the employee is engaged. Shortess, 991 So.2d at 1071; Wopara v. State Employees’ Group Benefits Program, 02-2641 (La.App. 1 Cir. 7/2/03), 859 So.2d 67, 69.
In addition to having to show legal cause sufficient to warrant disciplinary action, the Commission also must impose disciplinary action commensurate with the infraction. Shortess, 991 So.2d at 1072-73. As noted earlier, in evaluating whether the disciplinary action imposed by the Commission is commensurate with the infraction, an appellate court should not modify the Commission’s action unless it is arbitrary, capricious,, or characterized by an abuse of discretion. Such action will be deemed arbitrary or capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of the public service. Bannister, 666 So.2d at 647; Shortess, 991 So.2d at 1073.
^DISCUSSION
In this matter, the referee made several findings of fact, which we summarize, as follows. PSSC is a residential facility for persons with serious mental and/or physical disabilities. Home #306 houses approximately twelve male residents. Mr. Kirk worked as the supervisor at Home # 306 for seventeen years. Mr. Kirk was Kevin Cloud’s direct supervisor for approximately three years, and they had known each other for ten years and had a friendly relationship.
On May 24, 2012, a resident of Home # 306 ransacked his room and accused an employee of hitting him in his face. It was not unusual for Home # 306 residents to allege abuse by PSSC employees. The following evening, while Mr. Kirk supervised the evening shift at Home # 306, Mr. Cloud, also working the evening shift at Home # 306, saw a knot on the resident’s forehead and asked him what happened. The resident replied that the employee did not cause the knot on his forehead and stated that he did it to himself. Mr. Cloud asked the resident to write down his statement, which he did, and gave it to Mr. Cloud.
Thereafter, the resident recanted his statement and told DHH investigators that Mr. Cloud forced him to write it. DHH removed Mr. Cloud from client care and reassigned him. Mr. Cloud was informed that he was under investigation for allegedly failing to report allegations of abuse or neglect of a PSSC resident.
On June 4, 2012, Mr. Cloud met with Susan Frey for an investigative interview about his failure to report. In the interview, he told Ms. Frey that he gave the resident’s written statement to Mr. Kirk. During the interview, Mr. Cloud received approximately eight text messages and/or telephone calls from Mr. Kirk on his cellular phone that he did not answer or respond to. After meeting with Ms. Frey, Mr. Cloud met with Alicia Urven, a social services supervisor and clients’ rights advocate. He told her that he had been uncomfortable receiving the text messages and telephone calls from Mr. Kirk | ¡-.during his interview with Ms. Frey. Ms. Urven suggested that Mr. Cloud return Mr. Kirk’s telephone call on speakerphone, which he did. During the call, Mr. Kirk told Mr. Cloud to “be careful what you tell the investigators because they are out to get Home # 306.”
On June 11, 2012, Mr. Cloud met with Ms. Frey again, and during this meeting, Mr. Cloud received several text messages and emails from Mr. Kirk on his telephone, to which he did not respond. Ms. Frey suggested that Mr. Cloud return Mr. Kirk’s call on speakerphone so she could *206 record the conversation, and he did so. During the call, Mr. Cloud asked Mr. Kirk about the written statement and asked him if he ever found it and gave it to DHH. Mr. Kirk replied in the negative and told Mr. Cloud to me careful when talking to Ms. Frey. Mr. Kirk’s office was searched, but the statement was not found. Later on June 11, 2012, while supervising Home # 806, Mr. Kirk was hand-delivered a letter of suspension with pay pending the completion of the investigation into the allegations of abuse or neglect of the resident. The suspension letter also contained a directive not to go onto the PSSC grounds and not to have contact with PSSC employees
In its decision, the referee concluded that DHH failed to prove cause for discipline against Mr. Kirk regarding the charges of failing to preserve and disclose evidence and failing to comply with supervisory directives. However, in finding cause related to the charge of interfering with an investigation, the referee stated:
Mr. Kirk’s attempts to contact Mr. Cloud while Mr. Cloud was being interviewed during an investigation were entirely inappropriate. Both Ms. Urven and Ms. Pittman testified that PSSC employees are well aware that discussing matters pertaining to a pending investigation is not allowed. As a twenty-two year employee of the PSSC and supervisor who has been involved in numerous abuse/neglect investigations, especially at Home # 306, Mr. Kirk knew not to discuss matters related to an ongoing investigation, but he did so anyway. His warning to Mr. Cloud to be careful what he told the investigators “because they are out to get Home # 306.” is particularly disturbing, as he was Mr. Cloud’s direct supervisor and this comment certainly reveals Mr. Kirk’s intent to affect Mr. Cloud’s statements to the investigators, i.e. to interfere with the investigation. These actions by Mr. Kirk could have had an impact on the investigation, and thus they were detrimental to the state service. DHH has proved cause for discipline against Mr. Kirk with this charge.
1 ^Thereafter, in denying the appeal, the referee concluded:
Although DHH failed to prove all of the charges, it did prove that Mr. Kirk interfered with an ongoing investigation by discussing the matter with Mr. Cloud twice and by attempting to contact him numerous other times. This charge standing alone is legal cause for discipline and demotion is commensurate with the offense, particularly in view of the fact that Mr. Kirk was a supervisor with many years of experience and Mr. Cloud was his subordinate.
In this appeal, Mr. Kirk asserts that the Commission’s conclusion that DHH proved by a preponderance of the evidence that Mr. Kirk interfered with an ongoing investigation is incorrect. Mr. Kirk contends that he and Mr. Cloud had a close friendship, such that it would not have been unusual for Mr. Cloud to receive telephone calls from Mr. Kirk. Further, Mr. Kirk, as a pastor, provided spiritual counseling to Mr. Cloud; thus, Mr. Kirk contends, their close friendship indicated comfort and ease in their communications, and not the discomfort alleged by DHH. Mr. Kirk suggests that Mr. Cloud was placing the blame on him, as the accusation of abuse or neglect of a resident could have cost Mr. Cloud his job as well as possibly facing criminal charges for abuse.
Mr. Kirk asserts that the evidence presented does not support a finding that he interfered with an ongoing investigation. He alleges that DHH failed to prove that he in any way attempted to coach Mr. Cloud on what to tell or not tell investiga *207 tors. Mr. Kirk argues that the evidence does not support the conclusion that his actions were done with the intent to exercise authority or influence over Mr. Cloud.[1]
After a thorough review of the record, we find that the referee did not err in concluding that the disciplinary action taken was based on lawful cause and that Mr. Kirk’s interference in an ongoing investigation bore a real and substantial relation to the efficient and orderly operation of the public service in which he was engaged. We further consider the penalty of a demotion to Developmentalist, with the accompanying seven percent pay cut, to be 17commensurate with the infraction at issue. We find no manifest error in the factual determinations made by the referee and conclude that the decision to uphold the disciplinary action imposed was not arbitrary, capricious, or characterized by an abuse of discretion.
CONCLUSION
For the foregoing reasons, we cannot say that the Commission manifestly erred in finding legal cause to discipline Mr. Kirk or that its imposition of a demotion was arbitrary or capricious. Accordingly, the Commission’s May 30, 2013 decision is affirmed. Costs of this appeal are assessed to Mr. Kirk.
AFFIRMED.

. Mr. Kirk also contends that DHH failed to prove that Mr. Kirk knew of an ongoing investigation before his June 11, 2012 suspension letter. Clearly, Mr. Kirk knew of an ongoing investigation, as he told Mr. Cloud on June 4, 2012, to "be careful what you tell the investigators because they are out to get Home #306.”