STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2025 CA 0492

ROCHELL PROVOST

VERSUS

STATE OF LOUISIANA DIVISION OF ADMINISTRATIVE LAW AND
LOUISIANA DEPARTMENT OF INSURANCE

Judgment Rendered:  **DEC 1 9 2025**

* * * * *

ON APPEAL FROM THE
NINETEENTH JUDICIAL DISTRICT COURT
IN AND FOR THE PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA
DOCKET NUMBER 744465, SECTION 24

HONORABLE DONALD R. JOHNSON, JUDGE PRESIDING

* * * * *

Allison J. Sabine, Jr.
Baton Rouge, Louisiana

Attorney for Defendant-Appellant
Louisiana Department of Insurance

Trent John Gauthier
Lafayette, Louisiana

Attorney for Plaintiff-Appellee
Rochell Provost

**BEFORE:  MILLER, EDWARDS, AND FIELDS, JJ.**

**FIELDS, J.**

The Louisiana Department of Insurance (LDI) appeals a district court judgment that reversed the decision of the Division of Administrative Law affirming the LDI's decision to revoke the insurance producer license of plaintiff, Rochell Provost, and assess a $5,000.00 fine, thereby reinstating Ms. Provost's license and reversing the assessment of the fine. For the following reasons, we reverse the judgment of the district court.

## FACTS AND PROCEDURAL HISTORY

On July 14, 2022, Union National Life Insurance Company/Kemper Life (the "Company") notified LDI of its termination of Ms. Provost from employment for cause, specifically alleging Ms. Provost perpetrated fraudulent activity. Prior to sending this notification, the Company conducted an investigation concerning allegations of submissions of fraudulent documents by specific employees, including Ms. Provost, which concluded in a finding of misappropriation of funds. Attached to the Company's letter to LDI was a document entitled "Investigative Report of Misappropriation of Company Funds," which provided specifically that Ms. Provost was responsible for a total of $31,471.39 in misappropriated funds.[1]

Following receipt of this report, LDI sent Ms. Provost a Notice of Proposed Regulatory Action and Wrongful Conduct ("Notice") via certified mail on March 1, 2023. In the Notice, LDI advised Ms. Provost that documentation had been received by LDI from the Company showing that Ms. Provost had collected at least $31,471.39 in premiums from insurance policy holders that were not deposited with the Company in violation of La. R.S. 22:1562(D)(2) and 22:1924(A)(2), as defined by La. R.S. 22:1923(2)(d)(i), and resulted in a premium deficiency balance owed by Ms. Provost to the Company. Therefore, the Commissioner of Insurance of

---

[1] The report further provided that after application of Ms. Provost's bond in the amount of $3,205.06 and a payment made by Ms. Provost in the amount of $1,422.35, the net amount due to the Company was $26,843.98.

2

proposed suspending or revoking Ms. Provost's insurance producer license in accordance with La. R.S. 22:1554(A)(3), (4), and (14). The Notice concluded by inviting Ms. Provost to respond to these allegations and proposed action by submitting a written explanation within twenty days of the date of the letter.

LDI sent a Notice of Revocation and Fine ("Revocation") to Ms. Provost via certified letter dated July 7, 2023. The Revocation recited the allegations against Ms. Provost as provided in the Notice and the corresponding statutory violations for those allegations and stated that LDI did not receive a response from Ms. Provost regarding the allegations. Thus, because no contrary information was provided to LDI with regard to the allegations of misappropriation made by the Company, LDI determined it appropriate to revoke Ms. Provost's insurance producer license and to fine her in the amount of $5,000.00. The Revocation further advised Ms. Provost of her right to file an administrative appeal.

Ms. Provost appealed this adverse administrative action to the Division of Administrative Law pursuant to La. R.S. 22:2191, asserting that the allegations that she owed money to the Company were false. Ms. Provost further alleged that she was unable to deposit premium payments she received from her customers to the Company due to the Company's computer software issues that resulted in her being "locked out" of her computer on several occasions. Ms. Provost further alleged that her manager had access to her computer at all times and locked her out of said computer due to workplace vendettas. Attached to Ms. Provost's appeal were numerous pictures of a computer screen and screenshots of text messages.

The administrative law hearing was held telephonically in December 2023. During the hearing, several witnesses testified including, Dominique Jones, an insurance administrator for the Office of Insurance Fraud within LDI. Ms. Jones testified that her staff investigated the allegations against Ms. Provost after receiving the Company's original notice of termination of Ms. Provost and allegations of

fraud. Ms. Jones stated that her office sent Ms. Provost the Notice via certified mail inviting her to respond to the allegations, but that Ms. Provost provided no response, and eventually LDI sent Ms. Provost the Revocation. Ms. Jones noted that the particular staff person who investigated Ms. Provost's case was no longer with LDI. In conjunction with Ms. Jones' testimony, the Notice and Revocation were introduced into evidence.

Ms. Leticia Ortiz, who works for the Company as part of the Enterprise Investigation Unit, also testified. Ms. Ortiz stated that she was tasked with interviewing Ms. Provost as part of an audit requested by the Company. Ms. Ortiz further stated that during the interview, Ms. Provost admitted to redepositing money orders after changing the reference number and amount. Ms. Provost further admitted that it was wrong. Ms. Ortiz testified that Ms. Provost clarified that she only did what her manager advised her to do in order for the money orders to be accepted into the Salesforce system. Ms. Ortiz noted that the interview was not recorded, but that it took place on a "Teams" call whereby she and another employee of the Company interviewed Ms. Provost with the other employee taking notes of what was said. The report that was generated following the investigation, including Ms. Provost's interview, was entered into evidence.

The last witness called by LDI was Doug Dixon, the Director of Agency Administration at the Company. Mr. Dixon provided testimony regarding the Salesforce software that the Company had implemented in 2020 and how it worked. Mr. Dixon also testified in regard to the field audit that was run by the Company following Ms. Provost's termination in accordance with company policy as his team is responsible for gathering supporting documents for field audits, which are submitted to state departments of insurance. Mr. Dixon stated that what stood out with Ms. Provost's field audit was the amount of the discrepancy in her account, over $30,000.00, due to money orders being returned from the bank as unpaid for

4

various reasons. After the audit was complete, Mr. Dixon testified that his team discovered sixty-four different money orders that were flagged by the bank as redeposits by Ms. Provost. Mr. Dixon testified that Ms. Provost redeposited money orders to settle her cash balance due to the Company, with either duplicate money orders that were being turned in for a different amount than the money order was made for or altered money orders, *i.e.*, altered reference numbers or amounts, that were being turned in for a different amount than what the money order was made for. In conjunction with his testimony, images of sixty-four money orders along with the computer input provided by Ms. Provost for the deposit and the noted error for each transaction were introduced into evidence.

Mr. Dixon stated that the issue with the redeposited money orders was not caught earlier because money orders often took months to be returned from the bank to the head office. Mr. Dixon explained that local management was not involved in the process of receiving the returned money orders from the bank and may be unaware of the issues. Mr. Dixon also stated that each agent, such as Ms. Provost, kept the physical money orders and destroyed them after deposit. The money orders were never turned in and no one saw them unless and until the bank returned the scanned image of the money order. Mr. Dixon also stated that only Ms. Provost could submit money orders to her Salesforce account.

Ms. Provost testified on her own behalf and began by explaining how customers paid their insurance premiums. Ms. Provost stated that customers would often pay cash, which then put the onus on Ms. Provost to purchase a money order for the cash amount received to input into the Salesforce system. Ms. Provost admitted that she did redeposit certain money orders, but she testified that she did so when the initial deposit of the money order failed to go through. Thus, Ms. Provost stated she was not submitting one money order twice; rather, she was submitting it until the system accepted it once. Ms. Provost testified that she had issues with either

5

her computer or the Salesforce software since the inception of Salesforce, and although she requested she be given a new computer or assistance to fix the issues she was having with Salesforce, the assistance was never provided. Ms. Provost also testified that her local managers "micromanaged" her and the other employees in the office and would run their numbers daily. She further stated that she never had any significant outstanding arrears, which was why she characterized this audit and its findings as unbelievable. Ms. Provost further stated that she had never seen or been notified of the errors regarding the sixty-four returned money orders that were introduced into evidence and added that if there was an error with a money order submission, the computer would lock up and not allow her to proceed. Ms. Provost introduced into evidence screenshots of messages she sent to her managers regarding issues she was having with the Company's computer software, as well as images of her computer screen with error messages, some of which overlapped with a handful of the flagged money orders presented. Ms. Provost also submitted into evidence, two screenshots showing two separate occasions where she was contacted regarding large sum deficiencies in the amount of $10,000.00, and later $5,937.43, the outcomes for which were not addressed.

The administrative law judge ("ALJ") took the matter under advisement and issued its decision on January 19, 2024, affirming the actions of LDI after finding that Ms. Provost fraudulently deposited sixty-four money orders, in violation of La. R.S. 22:1924 as defined in La. R.S. 22:1923; and failed to account for or remit premiums collected and owed to the Company in violation of La. R.S. 22:1562(D)(2), resulting in a financial loss to the Company of $31,471.39. These violations made Ms. Provost subject to disciplinary action including license revocation pursuant to La. R.S. 22:1554(A)(3) & (4). Therefore, the ALJ determined that the LDI's actions were not arbitrary or capricious, and affirmed LDI's revocation of Ms. Provost's license.

Ms. Provost filed a "Petition for Judicial Review by Trial De Novo" in the district court.[2] Within the petition, she alleged that the ALJ's ruling affirming the revocation of her license and fine was not supported by a preponderance of the evidence and was arbitrary and capricious. Thereafter, Ms. Provost filed a first supplemental and amending petition for judicial review wherein she alleged that the LDI acted in an arbitrary and capricious manner and abused its discretion in revoking her insurance producer license and assessing her with a fine. Ms. Provost further alleged that LDI's actions were not supported by the evidence officially entered into the record, including the fact that Ms. Provost was locked out of her computer on numerous occasions while her managers had access to her computer at all times, and that Ms. Provost's managers ran daily reports on her transactions. Ms. Provost further took issue with the field audit being conducted after she was terminated.

The parties submitted the matter to the district court for review, and by judgment dated December 20, 2024, the district court reversed the LDI's decision to revoke Ms. Provost's insurance producer license and assessment of fine. It is from this judgment LDI appealed, asserting that the district court failed to conduct its judicial review in accordance with the provisions set forth in La. R.S. 49:978.1 of the Louisiana Administrative Procedure Act.

On August 21, 2025, this court, *ex proprio motu*, issued an interim order finding deficiencies in the judgment. Thus, we remanded the matter to the district court for the limited purpose of instructing the district court to sign an amended judgment to correct those deficiencies and to supplement the appellate record with the amended judgment. On September 18, 2025, the appellate record was supplemented with an amended judgment dated September 2, 2025. After

---

[2] Ms. Provost also sought a temporary restraining order, preliminary and permanent injunctions, and requested a stay and costs.

7

supplementation of the September 2, 2025 amended judgment, we maintained the appeal.

## STANDARD OF REVIEW

The Louisiana Administrative Procedure Act (the "Act") governs the judicial review of a final decision in an agency adjudication. The exclusive grounds upon which an administrative agency's decision may be reversed or modified on appeal is codified at La. R.S. 49:978.1(G), which states:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (6) Not supported and sustainable by a preponderance of the evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

Any one of the six bases listed in the Act is sufficient to modify or reverse an agency determination. **Johnson v. Strain**, 2015-0714 (La. App. 1st Cir. 11/6/15), 183 So.3d 562, 564.

In an administrative agency case, the district court acts as a reviewing court. **Id.** The district court's standard of review in reviewing the factual findings of the administrative agency is manifest error. The district court may only reverse the administrative tribunal's exercise of discretion and conclusions upon finding that the

8

agency's action was arbitrary and capricious. **Matter of Cerwonka**, 2019-1291 (La. App. 1st Cir. 6/26/20), 308 So.3d 299, 304, writ denied, 2020-01108 (La. 11/10/20), 303 So.3d 1045, citing **Save Ourselves, Inc. v. Louisiana Environmental Control Commission**, 452 So.2d 1152, 1159 (La. 1984). An administrative agency's conclusion is "capricious" when it has no substantial evidence to support it. Likewise, the word "arbitrary" implies a disregard of evidence or the proper weight thereof. **Marsellus v. Department of Public Safety and Corrections**, 2004-0860 (La. App. 1st Cir. 9/23/05), 923 So.2d 656, 661.

The proceedings and findings of an administrative agency are presumed to be legitimate and correct. **Reaux v. Louisiana Board of Medical Examiners**, 2002-0906 (La. App. 4th Cir. 5/21/03), 850 So.2d 723, 726, writ denied, 2003-2546 (La. 11/26/03), 860 So.2d 1138 (internal citations omitted). The burden of proof is on the appellant to demonstrate any grounds for reversal or modification. **Id.** Therefore, Ms. Provost bore the burden of proving the record contained no facts that would establish the validity of the allegations levied against her. See **Cranford v. Louisiana State Board of Practical Nurse Examiners**, 2008-0209 (La. App. 4th Cir. 10/1/08), 996 So.2d 590, 601.

An appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency, not of the district court. **McQueary-Layne v. Louisiana Board of Nursing - RN Division Through LSBN**, 2019-0641 (La. App. 1st Cir. 3/10/20), 2020 WL 8459145, *3 (unpublished), citing **Thigpen v. Louisiana State Board of Nursing**, 2013-0841 (La. App. 1st Cir. 2/14/14), 138 So.3d 16, 23. No deference is owed by this court to the findings of the district court. **McQueary-Layne**, 2020 WL 8459145 at *3. Consequently, this court will conduct its own independent review of the record in accordance with the standards provided in La. R.S. 49:978.1(G). See **Johnson**, 183 So.3d at 564.

9

# DISCUSSION

Louisiana Revised Statutes 22:1562(D)(2) prohibits licensed insurance producers from "improperly withholding, misappropriating, converting, or failing to timely remit any premiums, monies, or properties received in the course of doing insurance business, whether such premiums, monies, or properties belong to policyholders, insurers, beneficiaries, claimants, or others." Furthermore, La. R.S. 22:1924(A)(2)(a) provides that "[c]ommitting any [f]raudulent insurance act as defined in La. R.S. 22:1923" is a punishable act. Louisiana Revised Statutes 22:1923(2)(d)(i) defines a "fraudulent insurance act" to include acts or ommissions committed by any person who knowingly and with the intent to defraud "diverts, attempts to divert, or conspires to [d]ivert funds of an insurer, reinsurer, or other entity regulated under the laws of this state, or other persons in connection with the transaction of insurance or reinsurance."

Pursuant to Louisiana Revised Statutes 22:1554(A), the Commissioner of Insurance may revoke an insurance producer license, or may levy a fine, or any combination of these actions, for any one or more of the following causes including, in pertinent part,

> (3) The failure to account for or remit any premiums, monies, or properties belonging to another which come into the possession of the applicant in the course of doing insurance business, or improperly withholding, misappropriating, converting, or failing to timely remit any premiums, monies, or properties received in the course of doing insurance business, whether such premiums, monies, or properties belonging to policyholders, insurers, beneficiaries, claimants, or others.
>
> (4) Using fraudulent, coercive, or dishonest practices or misrepresentation, or demonstrating incompetence, untrustworthiness, or financial irresponsibility in the conduct of business such as might endanger the public.

On appeal, LDI essentially asserts that its revocation of Ms. Provost's license and assessment of a fine was neither arbitrary nor capricious, and in fact was supported by a preponderance of the evidence. After an independent review of the

10

administrative record, we agree. The documentary evidence submitted in this matter included the sixty-four flagged and returned money orders and the Company's investigation report supporting and substantiating the allegations that Ms. Provost improperly withheld, misappropriated, converted, or failed to timely remit premiums or monies that she received in the course of doing insurance business. Further, the evidence set forth by Ms. Provost demonstrated instances where high-value arrears were attributed to her during her time of employment. The ALJ also had the benefit of hearing live witness testimony and made certain credibility determinations that were supported by the evidence to which this court must give due deference. Moreover, Ms. Provost failed to demonstrate that LDI's findings and the administrative action against her violated any constitutional or statutory provision, exceeded the Commissioner of Insurance's statutory authority, or were made upon unlawful procedure. In accordance with the dictates of La. R.S. 49:978.1(G), we find no basis upon which to reverse or modify the decision of the ALJ affirming the actions of the LDI; consequently, we must reverse the judgment of the district court.

## CONCLUSION

For the forgoing reasons, we reverse the district court's September 2, 2025 amended judgment granting Rochell Provost's Petition for Judicial Review by Trial De Novo and reinstate the Division of Administrative Law's decision and order dated January 19, 2024, affirming the Louisiana Department of Insurance's revocation of insurance producer license number 639650, issued to Rochell Provost, and assessment of a $5,000.00 fine. Costs of this appeal are assessed against appellee, Rochell Provost.

**REVERSED.**

11