965 So.2d 418 (2007)
Randall Wayne EVANS, Jr.
v.
LOUISIANA STATE UNIVERSITY AGRICULTURE CENTER.
No. 2006 CA 2025.
Court of Appeal of Louisiana, First Circuit.
June 8, 2007.
*419 Floyd J. Falcon, Jr., Avant & Falcon, Baton Rouge, for Plaintiff-Appellant Randall Wayne Evans, Jr.
William A. Norfolk, Taylor, Porter, Brooks & Phillips L.L.P., Baton Rouge, for Defendant-Appellee Louisiana State University Agriculture Center.
Before: McKAY, GORBATY, and CANNIZZARO, JJ.[1]
*420 CANNIZZARO, J.
Randall Wayne Evans, Jr. was terminated from his employment with the Louisiana State University Agriculture Center (the "Ag Center"). He appealed the termination, and after a hearing before a referee of the Louisiana Civil Service Commission (the "Commission"), Mr. Evans' job was reinstated. The Ag Center appealed the referee's decision to the Commission, and the Commission upheld the original termination of Mr. Evans' job. Mr. Evans is now appealing the Commission's decision. For the reasons set forth in this opinion, we affirm the Commission's ruling.

FACTS AND PROCEDURAL HISTORY
Mr. Evans was employed at the Ag Center machine shop as a permanent employee. His supervisor was Thomas McClure. Mr. Evans and Mr. McClure shared an office in the machine shop, and the office contained a desk with a telephone and a calendar that both men used. The two men normally made work related notations on the calendar.
On June 17, 2005, Mr. Evans was sitting at the desk using the telephone, and he jotted the following notations in the squares of the calendar for the following dates:
June 6, 2005: "Tom received his new A.K. 47 Via Mail order"
June 7, 2005: "Tom assembled his new A.K. 47"
June 8, 2005: "Tom gunned down All of the student workers for Fun"
June 9, 2005: "Tom sharpened his knife"
June 10, 2005: "Watched Tom Kill a Person In cold Blood."
On Saturday, June 18, 2005, Mr. McClure was at work, and he saw the notations on the calendar. He recognized the handwriting as that of Mr. Evans. Mr. McClure then notified Michael Mailander, an associate professor at Louisiana State University ("LSU") in the Department of Biological and Agricultural Engineering (the "Department") and asked Dr. Mailander to come to the machine shop and look at the calendar. Dr. Mailander secured the calendar until Daniel Thomas, a professor at LSU who was the head of the Department, could see it.
Dr. Thomas gathered information regarding the notations on the calendar. Mr. Evans admitted to Dr. Thomas that he had made the notations but said that he was "joking" when he made them. He also admitted that "Tom" referred to Mr. McClure, his supervisor. After the incident involving the calendar, Mr. McClure was no longer willing to work in the machine shop with Mr. Evans. Therefore, Mr. McClure was transferred to another position in the Ag Center, and his workplace for the new job was two buildings away from the machine shop.
In a letter dated July 5, 2005, Mr. Evans was advised that disciplinary action against him was being considered on the ground that he had violated the Ag Center's Violence-Free Workplace policy (the "Violence-Free Policy"). He was permitted to respond to the letter, and his attorney answered the letter on behalf of Mr. Evans. In a subsequent letter dated July 20, 2005, Mr. Evans was advised that he was being dismissed from his position at the Ag Center. The letter stated that "[t]he reason we are taking disciplinary *421 action against you is for violating the LSU AgCenter Violence-Free Workplace policy. . . ." The letter then detailed the reasons for the action.
The July 20 letter further stated that "[w]e also noted that during the investigation into your actions, others expressed concern about your anger and how you manage it. In addition to the statements written on the shop calendar, you have exhibited behavior that has caused others in the workplace to be fearful of you, such as a tendency to abuse machinery in the shop when you become angry." Finally, the letter notified Mr. Evans that he was being dismissed from his job effective as of the close of business on July 29, 2005. The letter also advised Mr. Evans that he had the right to appeal the termination of his job to the Commission.
Mr. Evans appealed to a Commission referee the Department's decision to terminate his job. A hearing was held before the referee. Prior to the taking of testimony, however, the charge contained in the July 20 letter regarding how Mr. Evans managed his anger and his tendency to abuse machinery was dismissed, because it did not comply with Louisiana Civil Service Rule 12.8(a)(2). That rule provides:
A permanent employee who is removed or subjected to any disciplinary action, other than an emergency suspension or a suspension pending criminal proceedings, shall be given prior written notice which:
. . . .
2. contains such information as will fully inform the employee of the conduct for which the action is being taken and will enable him to prepare a defense, including, where pertinent, the date, time and place of such conduct and the names of persons directly involved in or affected by such conduct (unless their identities are protected by law, in which case, identification shall be made as permitted by law);
The referee found that the allegations regarding Mr. Evans' anger management and the machinery abuse did not contain a sufficiently clear and concise statement of those charges for the purpose of Rule 12.8(a)(2), and she dismissed them. The Ag Center did not contest the dismissal of the charges.
At the hearing that was held before the referee, Dr. Mailander testified that he had secured the calendar on which notations had been made so that Dr. Thomas could review the notations. Dr. Mailander further testified that Mr. McClure was very upset by what he saw on the calendar and that Mr. McClure could not believe what he was reading. The calendar with the notations on it was introduced into evidence.
Dr. Thomas also testified at the hearing before the referee. Dr. Thomas stated that Mr. Evans told him that the notations on the calendar were supposed to be a joke on Mr. McClure. Dr. Thomas further said that after the calendar notations were made, Mr. McClure was no longer willing "to go back in the shop with Mr. Evans at that point." Therefore, Mr. McClure "was no longer operating in the primary responsibility job responsibility that he had." Mr. McClure was moved elsewhere to work for the Ag Center. This created a hardship on the Department, because, according to Dr. Thomas' testimony, "we operate with two mechanical technical folks out of the shop and, essentially, one of those was not available to do whatever jobs or responsibilities were necessary in that shop area."
Mr. McClure stated at the hearing before the referee that after the calendar incident, he could no longer continue a close working relationship with Mr. Evans. *422 Mr. McClure testified that "I didn't want to be around him. I didn't know what this was all about and what he was up to." Although Mr. McClure did say that Mr. Evans had never struck him nor threatened him, Mr. McClure also said that he knew Mr. Evans was "capable of hitting a person, because he has in the past and has admitted that he has."
Michael F. Burnett, who was the director of the School of Human Resource Education and Work Force Development and a professor of human resource education at LSU, testified at the hearing before the referee. Dr. Burnett said that one afternoon Mr. McClure came to his office and seemed "very disturbed." Mr. McClure asked Mr. Burnett to come to the Ag Center shop and look at the calendar containing the notations made by Mr. Evans. Dr. Burnett described Mr. McClure's demeanor when they looked at the calendar as "very concerned, worried . . . a little nervous" and "very upset." Dr. Burnett stated that "I think [sic] had shared with him at that time that I would be very concerned if this was someone in our building that had written these things." Finally, Dr. Burnett said that "[i]t would make me very upset, very concerned as well, and I certainly agreed with him that he needed to have someone that had witnessed this and . . . my concern would be, I would [sic] very disturbed about this if someone in our buildingand, for that matter, I was very concerned that someone in the adjacent building to us, the next one over, had written these things down."
The director of human resources at the Ag Center, Ann Coulon, also testified at the hearing before the referee. She stated that she spoke to Mr. Evans about the notations on the calendar. He admitted making the notations but said that they were made as a joke. Ms. Coulon also learned from Mr. Evans that he was aware of the Violence-Free Policy, a copy of which was admitted into evidence. Additionally, Ms. Coulon interviewed Mr. McClure regarding the calendar notations, and she testified that he was "extremely upset," that he was "fearful," and that "[h]e was uncomfortable . . . to the point of tears on at least one occasion." She further stated that Mr. McClure was "frightened and scared to work with Mr. Evans." Mr. McClure "didn't know what Mr. Evans was capable of and he didn't want to work with him."
Randy Price, an assistant professor in the Department, stated at the hearing before the referee that he had never seen Mr. Evans strike or threaten to strike Mr. McClure and that he had seen no problems with their interactions. He did say, however, that sometimes Mr. Evans would get "fed up, but he pretty much controlled it."
Mr. Evans and his father also appeared at the hearing before the referee. Mr. Evans testified that he made the notations on the calendar as a joke. He said that he did not think he was doing anything wrong when he did so. He also stated that prior to his making the notations on the calendar, he and Mr. McClure "got along great." Mr. Evans also said that he had never threatened to strike or harm Mr. McClure and that he had never done so. Finally, Mr. Evans explained that he had, in fact, "beat up" his wife's boss but that he was just defending himself when he had confronted his wife's boss about cursing at his wife. Mr. Evans' father testified that he often visited the shop where Mr. Evans and Mr. McClure worked and that Mr. McClure and his son got along well.
The Commission referee issued a ruling in which she found that Mr. Evans had never threatened or harassed Mr. McClure. She also found that Mr. Evans had not violated the Violence-Free Policy. Mr. Evans was ordered to be reinstated to *423 his former position at the Ag Center with back pay, which was subject to an offset for any earnings or unemployment benefits he had actually received after he was terminated from his job. Mr. Evans was also awarded attorney's fees in the amount of $1,500.00.
The Ag Center applied to the Commission for a review of the referee's findings. After reviewing the record and the transcript of the hearing before the referee, the Commission granted the Ag Center's application for review and reversed the decision of the referee.
The Commission found that Mr. Evans had violated the Violence-Free Policy, which expressly states that "[t]he Ag Center does not tolerate violence, threatening behavior or harassment in the workplace." Additionally, the stated general policy of the Violence-Free Policy provides that a "peaceful and secure work environment that facilitates productivity and job performance" is to be ensured and that the "occurrence of violence, aggressive acts, verbal or non-verbal threatening behavior and harassment in the workplace . . . will not be tolerated."
The Commission also made several factual findings. It found that three senior administrators at LSU testified that Mr. McClure was visibly upset about the calendar notations and that he declined to work any more with Mr. Evans. The Commission further specifically found that, contrary to the referee's conclusion that the notations were not threatening, harassing, or abusive, albeit inappropriate and offensive, the notations were, in fact, threatening, harassing, and abusive. The Commission found that Mr. McClure was reasonably aggrieved by the calendar notations and that as a result, the relationship between Mr. Evans and Mr. McClure was "significantly impaired." The Commission further concluded that "not only had the appellant destroyed the working relationship between himself and his supervisor, but also his coworkers" and that the "peaceful and secure working environment" sought by the Violence-Free Policy was "directly adversely affected by appellant's actions." The Commission reversed the decision of the referee and upheld Mr. Evans' dismissal. Mr. Evans is now appealing the Commission's ruling.

DISCUSSION
Cause for Disciplinary Action
La. Const. art. 10, § 8 provides that "[n]o person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing." A classified employee who is disciplined has the right to appeal to the appropriate commission. Id. The burden of proof on appeal with respect to the facts is to be borne by the appointing authority. Id. Louisiana Civil Service Commission Rule 1.5.2.01 defines "cause" to mean "conduct which impairs the efficient or orderly operation of the public service." In AFSCME, Council # 17 v. State ex rel. Department of Health & Hospitals, 01-0422 (La.6/29/01), 789 So.2d 1263, the Louisiana Supreme Court stated that legal cause for disciplinary action by a civil service commission exists if the facts found by the commission disclose that an employee's conduct impairs the efficiency of the public service. 789 So.2d at 1268 n. 7. Additionally, there must be a real and substantial relation between the conduct of the employee and the efficient operation of the public service. Id. See also Dep't of Public Safety and Corrections, Office of State Police v. Piazza, 588 So.2d 1218 (La.App. 1st Cir.1992); Flowers v. Dep't of Revenue and Taxation, 507 So.2d 240 (La.App. 1st Cir.1987). The appointing authority must show by a preponderance of the evidence *424 that an employee's conduct impaired the efficient and orderly operation of a public service. Thornton v. DHHR, 394 So.2d 1269, 1271 (La.App. 1st Cir.1981).
Standard of Review
In Walters v. Department of Police of City of New Orleans, 454 So.2d 106 (La. 1984), the Louisiana Supreme Court discussed the standard by which a decision of a civil service commission must be reviewed. The Supreme Court, citing La. Const. art. 10, § 12(B), stated that "[t]he Commission's decision is subject to review on any question of law or fact upon appeal to the court of appeal." 454 So.2d at 113. Further, the Supreme Court held that "[t]he Commission has a duty to decide independently from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction." Id. The Supreme Court found that a "reviewing court should not reverse a commission conclusion as to the existence or absence of cause for dismissal unless the decision is arbitrary, capricious or an abuse of the commission's discretion." Id.
The Supreme Court in Walters stated:
In reviewing the commission's findings of fact, the court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. In judging the commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the commission's order unless it is arbitrary, capricious or characterized by abuse of discretion.
Id. at 114. See also Bannister v. Department of Streets, 95-0404 (La.1/16/96), 666 So.2d 641. In Bannister the Louisiana Supreme Court stated that "arbitrary or capricious" means that there is an absence of a rational basis for the action taken. Id. at 647.
Assignments of Error
Mr. Evans has raised four assignments of error on appeal. They are each discussed below.
The Commission erred in finding sufficient cause for terminating Mr. Evans from his job.
Cause that is sufficient to permit the imposition of disciplinary action with respect to a permanent classified state employee is "conduct which impairs the efficient or orderly operation of the public service." Louisiana Civil Service Commission Rule 1.5.2.01. In the instant case Dr. Thomas testified that as a result of the calendar notations made by Mr. Evans, Mr. McClure was no longer willing to work with Mr. Evans, because Mr. McClure feared Mr. Evans. Thus, according to Dr. Thomas' testimony, only one person was available in the Ag Center shop to do the work that had previously been done by two persons. Dr. Thomas further said that Mr. McClure was no longer performing his primary job responsibility, which was to work in the Ag Center shop. Clearly, Mr. Evans' conduct resulted in the impairment of the efficient and orderly operation of the shop. Thus, we find that the Department proved by a preponderance of the evidence that Mr. Evans' actions resulted in the impairment of the efficient and orderly operation of the Ag Center shop.
The standard pursuant to which an appellate court is to review a disciplinary penalty imposed by the Commission is to determine whether or not the action by the Commission is arbitrary and capricious. Walters, 454 So.2d at 114. In the instant case Dr. Thomas, Dr. Mailander, and Dr. Burnett were all very concerned about the notations that had been made on *425 the calendar. Dr. Burnett even testified that he was concerned that someone who was in a building near his office building would make such notations. His reaction to Mr. Evans' actions was very similar to that of Mr. McClure in that he expressed fear of the individual who wrote the notations. Only if there was no rational basis for the action taken by the Commission could this Court modify the Commission's disciplinary action. Bannister, 666 So.2d at 647. We find that there was a rational basis for terminating Mr. Evans from his job. Therefore, this assignment of error is without merit.
The Commission erred in finding that the Department proved by a preponderance of the evidence that the calendar notations violated the Violence-Free Policy.
The Violence-Free Policy clearly prohibits verbal or non-verbal threatening behavior and harassment in the workplace. It is clear from the testimony in this case that Mr. McClure perceived the calendar notations to be threatening and that he was harassed by Mr. Evans' actions. Dr. Thomas, Dr. Mailander, Dr. Burnett, and Ms. Coulon all testified to the effect that Mr. McClure was very distressed and disturbed by the notations that were made on the calendar. Ms. Coulon stated that Mr. McClure was reduced to tears at one point, and Mr. Burnett was himself distressed that someone working in close proximity to his building would make such notations on a calendar. There is ample evidence that Mr. McClure was harassed by Mr. Evans' actions. There was a clear violation of the Violence-Free Policy. We find this assignment of error to be without merit.
The Commission erred in reversing the decision of the referee.
We must review the decision of the Commission by determining whether or not the factual findings of the Commission were clearly wrong or manifestly erroneous. Walters, 454 So.2d at 114. The findings of the Commission were that Mr. Evans made the notations on the calendar and that the notations were threatening, harassing, and abusive. The Commission further stated in its opinion that it was reasonable for Mr. McClure to feel threatened and harassed by the calendar notations. Based on the testimony in the record, we do not find that these factual findings are clearly wrong or manifestly erroneous. Thus, they must be affirmed. This assignment of error is without merit.
The Commission erred in failing to order Mr. Evans' reinstatement and the payment of his attorney's fees.
We have found that the Commission's decision to terminate Mr. Evans was neither clearly wrong nor manifestly erroneous. Therefore, we need not address this assignment of error.

DECREE
Mr. Evans was properly terminated from his job. The ruling of the Commission is hereby affirmed.
AFFIRMED.
NOTES
[1] The Honorable James F. McKay, III, Judge, the Honorable David S. Gorbaty, Judge, and the Honorable Leon A. Cannizzaro, Jr., Judge, all members of the Fourth Circuit Court of Appeal, are serving as judges ad hoc by special appointment of the Louisiana Supreme Court.