991 So.2d 1067 (2008)
Robert SHORTESS
v.
DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS, Elayn Hunt Correctional Center.
No. 2006 CA 1532.
Court of Appeal of Louisiana, First Circuit.
May 28, 2008.
*1068 Jill L. Craft, Baton Rouge, LA, for Plaintiff/Appellant, Robert Shortess.
Joseph J. LaPlace, St. Gabriel, LA, for Defendant/Appellee, Department of Public Safety and Corrections, Elayn Hunt Correctional Center.
Robert R. Boland, Jr., Baton Rouge, LA, for Appellee, Anne Soileau, Director, Department of State Civil Service.
Before PARRO, GUIDRY, and McCLENDON, JJ.
*1069 McCLENDON, J.
The appellant, Robert Shortess, an employee of the Department of Public Safety and Corrections (DPSC) at Elayn Hunt Correctional Center (Hunt), appeals the disciplinary action imposed by the Civil Service Commission (Commission) after Mr. Shortess was found sleeping on the job, in violation of Rule 13(f), Aggravated Malfeasance, of the Corrections Services Employee Manual. The disciplinary action imposed was a four-step demotion, from Corrections Major to Corrections Sergeant. This demotion transferred Mr. Shortess from the position he had held since he was hired, i.e., investigating criminal activity at the prison, to the position of prison guard. The demotion also physically transferred Mr. Shortess from working eight-hour shifts in an office setting, involving limited direct inmate contact, to the cell blocks for twelve-hour shifts, watching, maintaining, and transporting prisoners.
Mr. Shortess contends the Commission erred in failing to consider evidence regarding his medical disability and the alleged failure of the DPSC to accommodate those disabilities, either as a defense to the imposition of disciplinary action or as factors mitigating the penalty imposed, which he also contends is excessive. After a thorough review of the record, we affirm.

FACTS AND PROCEDURAL HISTORY
Mr. Shortess began working as an investigative officer at Hunt in July 2004. Prior to working for DPSC, Mr. Shortess had been employed by the East Baton Rouge Parish Sheriff's Office for twenty-five years. He retired from the Sheriffs office after being specifically recruited to work at Hunt by Warden Marty Lensing in July 2004.[1]
When he was hired at Hunt, Mr. Shortess suffered from heart trouble, atrial fibrillation, and high blood pressure. He testified that he thoroughly discussed his health issues with Warden Lensing at that time. Specifically, Mr. Shortess reported that he would be unable to run. These limitations also were reported by Mr. Shortess in a correctional officer form he submitted to Hunt on July 19, 2004, which detailed the essential functions of the job. He marked "void" for being able to "Run." Mr. Shortess responded affirmatively on the form as being able and willing to perform the other detailed functions of the job. Warden Hubert confirmed that they were aware of Mr. Shortess's medical condition when he was hired. He testified that they were a little concerned about what he could do, specifically noting that he was "slow moving," but they liked his prior law enforcement experience, determined he could do the job, and hired him.
Mr. Shortess worked in an office adjacent to the prison's A-Building control center interlock. Although prison orderlies occasionally had access to, and worked in the hall outside his office, Mr. Shortess's duties required minimal direct contact with the inmates. According to Mr. Shortess, he felt this position adequately accommodated the physical conditions he had when hired. Mr. Shortess worked in this position without incident until January 17, 2006, the date of the occurrence forming the basis of the disciplinary action appealed herein.
Prior to the January 17, 2006 incident, on November 10, 2005, Mr. Shortess was diagnosed with prostate cancer and sought *1070 treatment with Dr. William Russell, a radiation oncologist. Mr. Shortess reported the cancer diagnosis and treatment plan to his supervisors. Surgery was performed on December 6, 2005, at which time radioactive seeds, which release radioactivity for approximately six months, were implanted in his prostate. The record contains the testimony of Dr. Russell, Mr. Shortess's treating physician, who testified that prostate implants can cause varying degrees of swelling, difficulty urinating, and fatigue, all symptoms from which Mr. Shortess suffered post surgery. Dr. Russell testified that Mr, Shortess returned to him on January 2:5, 2006, for post-surgery follow-up, at which time Mr. Shortess reported problems with frequent urination at night, which was causing him to be fatigued. At this time, Dr. Russell wrote a letter to Mr. Shortess's employer advising that fatigue would be a self-limited problem associated with Mr. Shortess's prostate cancer treatment, which he expected to fully resolve. Admittedly, his January 25, 2006 visit was after the incident giving rise to the disciplinary action.
Mr. Shortess returned to work shortly following the surgery. Assistant Warden McNeil (McNeil) testified that Mr. Shortess frequently complained of fatigue and of having to urinate throughout the night, adding to his fatigue during the day. According to McNeil, Mr. Shortess voiced these complaints for "days and weeks" prior to the sleeping incident.
On January 17, 2006, Mr. Shortess was in his office with headphones on, listening to tapes of inmate telephone conversations. The door to his office was open, and he was discovered by co-workers to have fallen asleep. The co-workers summoned McNeil, who went to Mr. Shortess's office and also observed that he was asleep. The men called out Mr. Shortess's name, and when he did not awaken, they began removing personal belongings and other items from his desk. Mr. Shortess awoke "three to four minutes later."[2] McNeil informed him that he had been observed sleeping while on duty, that such behavior would have to be reported, and that disciplinary action, including termination or dismissal, would be recommended. McNeil and Mr. Shortess then reported the incident to Warden Hubert. Initially, after it was suggested as an option, Mr. Shortess expressed a willingness to resign; however, after further consideration, particularly of his need to remain covered by his medical insurance plan, he decided not to resign and continued working.
On January 25, 2006, Mr. Shortess went in for a follow-up visit with his treating oncologist, Dr. Russell. On that date, Dr. Russell wrote a letter to the DPSC reporting that Mr. Shortess was undergoing treatment for prostate cancer and as a result, was suffering from fatigue. Although he expected the "self-limited" condition to fully resolve, he reported that as of that date, Mr. Shortess was still under his care. Mr. Shortess immediately submitted the letter to his supervisors. The following day, on January 26, 2006, a VR-1 (DPSC Employee Rule Violation Report) was issued charging Mr. Shortess with a Rule 13(f) violation, i.e., aggravated malfeasance, based on the January 17 sleeping incident, and recommending a "Demotion to Sergeant."
After a hearing, the Commission found there was legal cause for the action and denied Mr. Shortess's appeal of the demotion. *1071 In reaching its decision concerning the disciplinary action, the Commission refused to consider Mr. Shortess's claims that he had disabilities that DPSC was obligated to accommodate or that his demotion was illegal under federal or state law. The Commission asserted that it lacked jurisdiction to entertain claims under the Americans with Disabilities Act (ADA). Foregoing consideration of these claims and noting that the department could have terminated Mr. Shortess for his infraction, the Commission adopted and imposed the recommended four-step demotion.[3] This appeal followed.

BURDEN OF PROOF/STANDARD OF REVIEW
In civil service disciplinary cases, the burden of proof is on the appointing authority to prove its case by a preponderance of the evidence. Shields v. City of Shreveport, 579 So.2d 961, 964 (La.1991). However, once that burden is met and disciplinary action is imposed, the state employee bears the burden of proving that his dismissal (or other action) was arbitrary or capricious. Guillory v. State Dept. of Institutions, La. State Pen., 219 So.2d 282, 286 (La.App. 1st Cir.1969); see also Johnson v. State Dept. of Institutions, 198 So.2d 159, 161 (La.App. 1st Cir.1967).
In reviewing a Commission decision, great deference is given to the factual determinations of the Commission, and an appellate court will not overturn those determinations in the absence of clear or manifest error. On the other hand, when evaluating the Commission's determination as to whether the action is commensurate with the infraction, an appellate court should not modify the Commission's order unless it is arbitrary, capricious, or an abuse of discretion. See Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647. "Arbitrary or capricious" means the absence of a rational basis in the record for the action taken. Id.

APPLICABLE LAW
Employees with permanent status in the classified civil service may be disciplined only for cause expressed in writing. La. Const. art. X, § 8(A). "Cause" for the dismissal of such an employee includes conduct prejudicial to the public service involved or detrimental to its efficient operation. In other words, disciplinary action will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of the public service. Bannister, 95-0404 at p. 8, 666 So.2d at 647.

LEGAL CAUSE FOR DISCIPLINARY ACTION
The employer must prove by a preponderance of the evidence that the employee's conduct did, in fact, impair the efficiency and operation of the public service in which the employee is engaged. Wopara v. State Employees' Group Benefits Program, 02-2641, p. 4 (La.App. 1st Cir.7/2/03), 859 So.2d 67, 69. DPSC presented evidence that Mr. Shortess was working in an office that, although separate from the cell-blocks and general prison populations, nevertheless was accessible to prison orderlies assigned to duties in the hallway outside Mr. Shortess's office. At the time that Mr. Shortess was observed sleeping, the door to his office was *1072 open, he had headphones on from having been listening to tapes, and he continued sleeping while co-workers called out his name and removed items from his desk. The Commission found, based on this evidence, that Mr. Shortess had been asleep for at least three to four minutes after first being observed and given the proximity of and access to his office by prisoners, that his being asleep had impaired the safety and efficient operation of the prison. For the following reasons, we find no manifest error in the Commission's findings.
It seems axiomatic that a person working in a prison, particularly in close proximity with prisoners, who falls asleep for any length of time while on the job, inherently impair's the efficiency of the public service of maintaining and keeping order within a prison. It also seems logical that sleeping while on the job in a prison constitutes legal cause for disciplinary action. In a decision rendered more than thirty years ago, in reviewing a prison guard's dismissal for falling asleep while on guard duty, this court stated:
It is elementary that in view of the nature of the services required of a particular employee, certain conduct constitutes such a gross and flagrant violation of duty as to warrant dismissal of the offending employee even though such action is not proscribed by an express rule or regulation. Obviously falling asleep while on guard at a state penitentiary falls within such category.
Guillory v. State Dept. of Institutions, La. State Pen., 219 So.2d 282, 285 (La.App. 1st Cir.1969).[4]
The jurisprudence of this circuit has consistently and firmly held that sleeping on the job while in a prison setting constitutes legal cause for the imposition of disciplinary action.[5] Thus, the Commission did not manifestly err in finding there was legal cause for imposing disciplinary action against Mr. Shortess.

DISCIPLINARY ACTION IMPOSED COMMENSURATE WITH INFRACTION?
In addition to having to show legal cause sufficient to warrant disciplinary action, the Commission also must impose disciplinary action commensurate with the *1073 infraction. Walters v. Department of Police of City of New Orleans, 454 So.2d 106, 113 (La.1984); Evans v. Louisiana State University Agriculture Center, 06-2025, p. 8 (La.App. 1st Cir.6/8/07), 965 So.2d 418, 424. As noted earlier, in evaluating whether the disciplinary action imposed by the Commission is commensurate with the infraction, an appellate court should not modify the Commission's action unless it is arbitrary, capricious, or characterized by an abuse of discretion. Such action will be deemed arbitrary or capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of the public service. Bannister, 95-0404 at p. 8, 666 So.2d at 647.
This court's latest decision on this issue reflects that sleeping on the job, while certainly constituting legal cause warranting some form of disciplinary action, does not, in and of itself, nor in every instance, warrant termination. See Marsellus v. Department of Public Safety and Corrections, 04-0860 (La.App. 1st Cir.9/23/05), 923 So.2d 656.[6] In Marsellus, after reviewing a record of the dismissal of a prison guard, which contained testimony by two eyewitnesses who observed the guard sleeping on the job on two separate occasions, this court held that the sanction of termination constituted excessive disciplinary action, "not commensurate with the relative seriousness of the offense actually proven," and remanded the matter to the Commission for imposition of appropriate discipline, short of termination. Id., 04-0860 at pp. 8-9, 923 So.2d at 661-62. This finding was based on this court's conclusion that evidence that the prison guard was witnessed having his head against a wall and his eyes shut on one occasion, and having his head and upper body bent over and his eyes closed on another occasion, proved that the guard "nodded off" and was inattentive for no more than "a few seconds." Id., 04-0860 at p. 8, 923 So.2d at 661. This court concluded that this evidence "falls short of proof that [the guard's] conduct had such `a real and substantial detrimental effect' on the efficiency and orderly operation of [the prison] that the ultimate sanction of termination was warranted." Id. Notably, this court reached its conclusion recognizing the fact that Rule 13(f) of the Corrections Services Employee Manual specifically prohibits unauthorized sleeping on the job, but noting that the plaintiff was not charged with violating Rule 13(f), but was charged instead with violating Rule 13(g), which provides that each employee "must perform his duties so as to fulfill the purpose and responsibility of his assignment." Thus, this court found the Commission had legal cause to impose disciplinary action, but found that termination was excessive discipline, not commensurate with the offense proven.
In imposing the disciplinary action in this case, the Commission expressly noted and distinguished the Marsellus case on the basis that Marsellus, the prison guard in that case, only "nodded off' for a "few seconds," and Mr, Shortess was "asleep" *1074 anywhere from two to ten minutes. We agree that the Marsellus case presented an unusual and unique situation and is sufficiently distinguishable.[7] Thus, upholding a termination under these facts would not be inconsistent with that decision.

MITIGATING FACTORS
Mr. Shortess contends that the Commission erred as a matter of law by refusing to consider as mitigating factors the evidence presented about his physical limitations, medical illnesses, and related disabilities, and further evidence that these were all made known to DPSC at his time of hire, and thereafter, and that DPSC failed to make any accommodations. The Commission refused to consider this evidence, finding that it was offered to prove a violation of the federal ADA and Louisiana's Civil Rights Act for Handicapped Persons, and concluding that any possible violation by DPSC of these laws was beyond the jurisdiction of the Commission. Although we agree with the Commission that it did not have jurisdiction to entertain Mr. Shortess's claims under the federal ADA or the state Civil Rights Act for Handicapped Persons,[8] we find the Commission nonetheless erred as a matter of law in refusing to consider this evidence as facts relevant to the imposition of disciplinary action in this case. Notwithstanding that this evidence might also support a claim, in the appropriate court, of violations of any of the aforementioned acts, the evidence still provides facts relevant to the issue of the propriety of Mr. Shortess's discipline, warranting consideration by the Commission.
However, under the particular facts and circumstances presented herein, the Commission's refusal to consider this evidence does not affect the resolution of the issue. Although the Commission ruled that it did not have the authority to consider the evidence, the Commission specifically noted that the record revealed that the DPSC did consider those factors and indeed mitigated the penalty imposed to a demotion rather than termination, which is the usual and customary disciplinary action imposed for sleeping on the job by a prison employee. The Commission's upholding of the demotion, rather than finding termination was warranted, belies the argument that the mitigating factors were not considered and indeed, mitigated the penalty imposed.

CONCLUSION
For the foregoing reasons, we cannot say that the Commission manifestly erred in finding legal cause to discipline Mr. Shortess or that its imposition of a four-step demotion was arbitrary or capricious. Accordingly, that decision is affirmed. Costs of this appeal are assessed to Mr. Shortess.
AFFIRMED.
DOWNING, J., dissents.
NOTES
[1] At the time of the incident at issue, Warden Lensing was no longer at Hunt, and had been replaced by Warden Cornell Hubert.
[2] The record fails to establish how long Mr. Shortess was actually sleeping at his desk, but contains differing accounts supporting a finding of anywhere between two to ten minutes. The Commission made a factual finding that it was three to four minutes after first being observed. This finding is sufficiently supported by the record.
[3] According to Warden Hubert, correctional officers are routinely terminated for sleeping while on duty; however, the department gave special consideration to Mr. Shortess's medical illnesses, as well as his need to remain covered by medical insurance, and opted for demotion.
[4] The court in Guillory did not immediately affirm the dismissal, finding that a remand was warranted to allow the plaintiff therein to present evidence of discrimination in the disciplinary action taken against him. However, on appeal after remand, the dismissal was affirmed. See Guillory v. State Dept. of Institutions, La. State Pen., 234 So.2d 442, 445 (La.App. 1st Cir.1970). See also Bonnette v. Louisiana State Penitentiary, Department of Institutions, 148 So.2d 92, 98 (La.App. 1st Cir. 1962), where two prison guards were terminated after it was discovered that they were asleep while on duty and utilized alarm clocks to awaken them in order to timely make their watch calls, and this court again stated that "[flailing asleep while on guard duty at a penal institution is such a gross breach of duty as to warrant disciplinary action by the employer...." In Bonnette, as in Guillory, the court did not immediately affirm the dismissals, finding that a remand was warranted to allow the plaintiffs to present evidence of discrimination; however, on appeal after remand, the dismissals were affirmed. See Bonnette v. Louisiana State Penitentiary, Department of Institutions, 162 So.2d 21 (La. App. 1st Cir.), writ refused, 245 La. 1085, 162 So.2d 575 (1964).
[5] See Hudson v. Department of Public Safety and Corrections, Louisiana State Penitentiary, 96-0499 (La.App. 1st Cir. 11/8/96), 682 So.2d 1314, writ denied, 96-2942 (La. 1/31/97), 687 So.2d 408; Searcy v. Louisiana Department of Corrections, 484 So.2d 773 (La.App. 1st Cir. 1986); Sample v. Department of Corrections, 434 So.2d 1211 (La.App. 1st Cir.1983); Dent v. Dept. of Corrections, 413 So.2d 920 (La. App. 1st Cir.1982). Each of these cases upheld terminations of prison employees who had been asleep on the job for as little as two minutes.)
[6] The author of this opinion dissented in Marsellus, being of the opinion that termination is neither excessive nor arbitrary and capricious when a prison guard is found sleeping or "nodding off" on the job, given that it only takes a second to grab a gun or to actualize any of the many other potential risks created when a guard is inattentive for any length of time. This author believes it is not the function of the court nor within the court's authority to establish jurisprudential guidelines based on the length of time of sleep against which to decide if termination is commensurate with this type of infraction. However, it is now the law of this circuit on the issue and we are constrained to apply the law in accordance with that decision.
[7] It is again noted that this writer dissented in Marsellus, being in disagreement with the "length of time" analysis employed by the majority to determine whether sleeping on the job in a prison setting warrants disciplinary action.
[8] See La. Const, art. X, §§ 8, 10, and 12.