LEISA FARRAR
v.
LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER-MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS
No. 2008 CA 1964
Court of Appeals of Louisiana, First Circuit.
March 27, 2009.
Not Designated for Publication
J. COURTNEY WILSON, Counsel for Plaintiff/Appellant Leisa Farrar
PHILIP H. KENNEDY, Counsel for Defendant/Appellee LSU Health Sciences Center, Medical Center of Louisiana At New Orleans
ROBERT R. BOLAND, Jr., Counsel for Appellee Anne S. Soileau, Director, Department of State Civil Service
Before: CARTER, C.J., WHIPPLE AND DOWNING, JJ.
DOWNING, J.
Leisa Farrar appeals an adverse ruling by the State Civil Service Commission upholding her three-day suspension for rude, unprofessional, and inappropriate behavior. For the following reasons we affirm the Commission's decision.

FACTS AND PROCEDURAL HISTORY
This action arises from a verbal altercation and actions at the Louisiana State University Health Sciences Center  Medical Center of Louisiana at New Orleans (LSUHSC) between Ms. Farrar, a Registered Nurse 3 and classified civil service employee, and Mr. Brown, an EMS officer.
We summarize the findings of fact of the Civil Service Commission Referee as follows. On January 12, 2008, Ms. Farrar was performing ambulance triage duties in the Emergency Department. During Ms. Farrar's lunch break, EMS brought multiple patients on stretchers into the hospital. Among the patients were a father and son who were brought to the hospital after a motor vehicle accident. The Referee found that the father, being in more critical condition, was taken immediately to the trauma room, while the son, accompanied by two EMS[1] officers, was left to wait for a bed to become available. The son was triaged and given a hospital identification bracelet before Ms. Farrar's return from lunch. The Referee found that upon Ms. Farrar's return from lunch, she noticed an EMS run report that stated that the patient-son had been "turned over to ER staff." Although Ms. Farrar did not ordinarily see run reports, she found this statement to be incorrect and commented aloud that the report appeared to be falsified.
The Referee further found that that after thirty to forty-five minutes of waiting, the son became restless and uncomfortable on the stretcher and attempted to undo his spine immobilization restraints and loosen his cervical collar. Mr. Brown is a field supervisor and one of the EMS ambulance officers who was waiting with the son. Mr. Brown approached the nurses' station to report the situation. The referee's findings of fact state the following about the verbal altercation:
Mr. Brown went to the nurses' station to report the son's situation while Mr. Johnson stayed with him at the stretcher. Mr. Brown hoped that something could be done to get the son off the spine board, so he told Ms. Farrar, `Your patient is trying to get off the stretcher.' Ms. Farrar sarcastically replied, `He's not out patient, he's your patient!' Thinking she was joking, Mr. Brown said, `C'mon, you know better than that, he's your patient when we come in the door.' Ms. Farrar sternly replied, `If he falls off the stretcher, it's your responsibility.' At this point, Mr. Brown realized that Ms. Farrar was not joking and became somewhat annoyed. Raising his voice, he told her about West Jefferson Hospital's procedures regarding the care of emergency patients. She then stated he must be new, because he did not know what he was talking about. Mr. Brown informed her that he was not new; he had worked for EMS for five (5) years and was a supervisor. In a condescending, offensive tone of voice, Ms. Farrar told Mr. Brown, `You need to go back by your patient.' Mr. Brown then returned to the son's stretcher.
The Referee found that at this point, the exchange ended. The referee also found that at some point during the exchange, Ms. Farrar looked over at the son, but she did not get up and go to check on his condition.
Pursuant to Civil Service Rule 12.2, Ms. Farrar was given written notice by letter dated January 22, 2008, from her appointing authority informing her that she was to receive a three-day suspension as disciplinary action for rudeness and inappropriate response to patient care. On March 13, 2008, Ms. Farrar filed an appeal, denying the allegations of the suspension letter arguing that it was EMS who was rude and that any inappropriate care was caused by EMS. After a public hearing, the Referee for the State Civil Service Commission found that the appointing authority, LSUHSC, had proved cause for discipline for the charges and that the threeday suspension was commensurate with the offenses.[2]
Ms. Farrar appeals, asserting that the State Civil Service Commission erred in finding that: (1) she was rude to Mr. Brown; and (2) she made an inappropriate response to patient need.

STANDARD OF REVIEW
When reviewing the Commission's finding of fact, the appellate court is required to apply the manifestly erroneous or clearly wrong standard of review. However, in evaluating the Commission's determination as to whether the disciplinary action taken by the appointing authority is based on legal cause and commensurate with the infraction, the reviewing court should not modify or reverse the Commission's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. Shortess v. Dept. of Public Safety & Corrections, 06-1532, p. 8 (La. App. 1 Cir. 5/28/08), 991 So. 2d 1067, 1071. "Arbitrary or capricious" means the absence of a rational basis in the record for the action taken. Bannister v. Dept. of Streets, 95-0404, p. 8 (La. 1/16/96), 666 So. 2d 641, 647. The term "arbitrary" implies a disregard of the evidence or of the proper weight of that evidence, and a conclusion is "capricious" when the conclusion is contrary to substantiated competent evidence or there is no substantial evidence to support it. Burst v. Board of Commissioners, Port of New Orleans, 93-2069, p. 5 (La. App. 1st Cir. 10/07/94), 646 So. 2d 955, 958.

DISCUSSION
The issue facing the court on both assignments of error is whether the employer, here LSUHSC, proved by a preponderance of the evidence that the employee's conduct impaired the efficient and orderly operation of the public service in which the employee was engaged.
Article 10, Section 8(A) of the Louisiana Constitution governs disciplinary actions as to classified civil service employees. It provides that "[n]o person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing." There is legal cause for disciplinary action if the conduct of the civil service employee impairs the efficient or orderly operation of the public service. Legget v. Northwestern State Coll., 242 La. 927, 938 (La. 1962). For legal cause to be present, there must be a substantial relationship between the efficient operation of the public service and the conduct of the employee. Id. If no substantial relationship exists, the disciplinary action will be deemed arbitrary and capricious. Id.

1. Rudeness
The Referee found that Ms. Farrar's actions towards Mr. Brown constituted rudeness. The referee did not err in this regard. Under the Emergency Medical Treatment and Active Labor Act (EMTALA), the patient becomes the hospital's responsibility once the patient arrives at the hospital. 42 C.F.R. §489.24(b).
Several facts support the finding that Ms. Farrar was rude. As noted by the Referee, Ms. Farrar's initial response to an issue of patient care was a sarcastic denial that the son was the hospital's patient. The patient had been triaged and had received a hospital bracelet, and as shown under applicable law, the son was the hospital's patient at the time of the incident. The Registered Nurse Manager for the Emergency Department testified that the conduct of appellant was rude and that the nurses were obligated to treat other professionals with respect and dignity. Stating, "You must be new," or "you must not know your job description," as Ms. Long testified, was a rude response to a fellow professional. The same witness testified and the Referee found that the tone of voice Ms. Farrar used was demeaning and condescending. The referee's factual findings in this regard are supported by the record and are not manifestly erroneous.
Where the finding and reasons for the appointing agency's disciplinary action are implied by the record and where the record yields sufficient evidence to uphold the agency's action, the appellate courts will not remand the case for the "formality of having the agency make explicit its findings." Giallanza v. Louisiana Public Service Commission, 412 So. 2d 1369, 1375 (La. 1982). Although the Referee does not explicitly state how the conduct impaired the efficient operation of the civil service, as the previous discussion shows, there is sufficient evidence to uphold the agency's action. Courteous interaction and cooperation between the professionals involved, here EMS officers and registered nurses, is clearly a necessity for the efficient operation of the public service and the appointing agency's obligation to provide appropriate medical care in the Emergency Department.

2. Inappropriate Response to Patient Care
The Referee concluded that Ms. Farrar's actions in observing the patient from a distance rather than physically going to check on the patient constituted an inappropriate response to patient care. The referee did not err in this regard.
Several facts support the conclusion that Ms. Farrar's actions constituted an inappropriate response to patient care. The Registered Nurse Manager testified that it was inappropriate to argue with the EMS officer rather than physically check on the patient. One witness, who was one of the Emergency Department supervisors on the day of the incident, testified that if he had triaged the patient, knew the circumstances, and the vital signs hadn't changed, it would be sufficient to "eyeball" the patient. He stated further that if he hadn't personally triaged the patient, which Ms. Farrar had not, he would personally go over to the patient since he would not be familiar with the circumstances. He stated further that he would expect all nurses to do so. One of the doctors in the Emergency Department testified that when a patient is restrained on a stretcher, the patient should be under close observation for medical reasons. Another witness, a registered nurse, testified that had she been assigned as the triage nurse, she would have physically gone over and checked on the patient. The referee's factual findings in this regard are supported by the record and are not manifestly erroneous.
As stated previously, if the record contains sufficient evidence to support the appointing authority's action, the case will not be remanded in order to have the Commission make a formal finding. Giallanza, 412 So. 2d at 1375. The evidence in this case supports the conclusion that Ms. Farrar's actions in providing an inappropriate response to patient care impaired the efficient operation of the public service. When Ms. Farrar's attention was directed to the patient trying to undo the spine immobilization straps, which is an issue of patient care, she should have physically gone to check on the patient. As one doctor testified, when a patient is restrained on a stretcher, several different problems could arise, such as the patient aspirating, and therefore the patient should be under close monitoring. By simply glancing at the patient from a distance, Ms. Farrar did not appropriately respond to an issue of patient care, and she thereby impaired the efficient operation of the public service.

DECREE
Finding no merit in Ms. Farrar's assignments of error, we affirm the findings of the State Civil Service Commission. The costs of this appeal are assessed to plaintiff/appellant, Leisa Farrar.
AFFIRMED
NOTES
[1] The terms "EMT" (emergency medical technician) and "EMS" (emergency medical services) were both used interchangeably in the record when referring to the ambulance officers.
[2] The Referee made the findings of fact and rendered the decision for the Commission. No party requested that the Commission review the decision. Therefore, because the Commission did not make any independent findings, the Referee's decision became the final decision of the Commission.