NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 0856

TRACY PREE

VERSUS

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,
LOUISIANA STATE PENITENTIARY

Judgment Rendered: **FEB 1 9 2021**

\*\*\*\*\*\*\*\*

Appealed from the State Civil Service Commission
State of Louisiana
Suit No. S-18474

The Honorable David L. Duplantier, Chairman; D. Scott Hughes,
Vice-Chairman; G. Lee Griffin, John McLure, C. Pete Fremin,
Ronald Carrere, and Jo Ann Nixon, Members

\*\*\*\*\*\*\*\*

Jill L. Craft
W. Brett Conrad, Jr.
Baton Rouge, Louisiana

Plaintiff/Appellant
Tracy Pree


Heather Hood
Debbie Rutledge
Baton Rouge, Louisiana

Counsel for Defendant/Appellee
Louisiana Department of Public
Safety and Corrections, Louisiana
State Penitentiary


Sherri L. Gregoire
Baton Rouge, Louisiana

Counsel for Defendant/Appellee
State Civil Service Commission,
and Byron Decoteau, Director,
Department of State Service

\*\*\*\*\*\*\*\*

BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.

**LANIER, J.**

In the instant case, appellant challenges a February 5, 2020 decision of the Louisiana State Civil Service Commission ("the Commission"). For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

At all times pertinent hereto, appellant, Tracy Pree, was working as a Corrections Sergeant on the west yard of Louisiana State Penitentiary ("LSP"). On May 21, 2018, Sergeant Pree was ordered to provide the passcode to her personal cell phone following a drug bust on the west yard. After being warned that she would be placed on leave if she did not comply with the order, Sergeant Pree declined. Sergeant Pree was sent home with a written order to contact Assistant Warden, Colonel Jeremy McKey. The order, which was signed by both Colonel McKey and Sergeant Pree, provided as follows: "Sergeant T. Pree, this is a direct verbal order for you to call me, Colonel McKey, at 1:00 p.m. on 5/22/18." According to Colonel McKey, Sergeant Pree never called him. When asked why she never called Colonel McKey, Sergeant Pree testified that she did not refuse to call him, but rather that she was confused as to why she needed to call him.

While on leave, Sergeant Pree received a letter from DPSC dated May 31, 2018, signed by Human Resource Supervisor Chassity Rheams. The letter was mailed to the address on file for Sergeant Pree, 534 Cannonburg Road, Natchez, Mississippi, 39120, and Ms. Rheams completed an LSP proof of mailing to coincide with the mailing of the letter. The letter requested that Sergeant Pree report to LSP Human Resource Department on June 8, 2018, at 10:00 a.m. When Sergeant Pree called Ms. Rheams to inquire about the letter, Ms. Rheams advised Sergeant Pree that she (Ms. Rheams) had been told to tell Sergeant Pree to come to the Human Resource Department. According to Ms. Rheams, although Sergeant Pree said that she would be there, she did not show up for the meeting.

2

Sergeant Pree testified that when she spoke to Ms. Rheams about the May 31, 2018 letter, they were both confused about why she was to report to the Human Resource Department. Sergeant Pree denied ever telling Ms. Rheams that she was going to be at the June 8, 2018 meeting. Rather, Sergeant Pree maintained she was waiting on Ms. Rheams to call her back with more information on the meeting, stating, "Well, they had placed me on leave. I was waiting on them to call me back." When asked why she had avoided the order to call Colonel McKey and now the order to show up for the June 8, 2018 meeting, Sergeant Pree replied, "I didn't avoid them. I was confused[.]"

A second letter dated June 15, 2018, was mailed to Sergeant Pree at the same address and contained the following order: "This is a direct written order to report to [LSP] Investigations Department on Monday, June 25, 2018 at 10:00am. Failure to do so may result in possible disciplinary action up to termination, and you will be placed [on] leave without pay." For this letter, LSP had a Certificate of Mailing completed by the United States Postal Service indicating that the letter was presented to the post office for mailing on June 15, 2018.

Sergeant Pree denied receiving the June 15, 2018 letter. She indicated that she personally checked her mail every day. When asked how she could explain receiving some of the letters from DPSC and not receiving others, Sergeant Pree stated, "the only thing I can say is they got lost in the mail." Sergeant Pree noted that during the time in question, her address had never changed. In further discussion regarding the mailing of the letters, the following colloquy occurred between Sergeant Pree and counsel for DPSC:

Q. Do you think Ms. Rheams mailed the letters as she signed?
A. No, ma'am.
Q. You don't think she mailed them?
A. No, ma'am.
Q. Why do you think she wouldn't mail them?

A. Because I never received them. How I received those two and didn't receive nothing else from them? And I go to the mailbox to check them.

Q. But what about the one on June 15th when it's stamped by the post office?

A. I don't know what happened with that one either. Like I said, I don't believe it was really mailed, because I received the other ones --

Q. You don't believe it was what?

A. Mailed, because I received the other ones, but I didn't receive this one, or it got lost in the mail.

Q. You saw the proof that it was mailed?

A. I seen [sic] the receipt.

Q. And that's the proof that it was mailed. Okay. DOC No. 5, postmarked -- you see it's postmarked.

A. Yes, ma'am.

Q. So you can tell it was mailed, officially mailed, correct?

A. It's postmarked.

Q. So you're disputing the post office even mailed the letter. Okay. But let's take that. So, if you didn't get the letters and we're all the way into June now, what do you think is going on with your job, why are you not at work?

A. That I was wondering about too, but I still was checking the mailbox for mail.

Q. But you never picked up a phone and called?

A. No, ma'am. I still was checking the mailbox every day myself.

The next mailing to Sergeant Pree was the July 31, 2018 "Pre-Termination 'Loudermill' Review," which provided, in pertinent part:

> [You were] sent a letter via Certificate of Mail from Assistant Warden Kevin Benjamin giving you [a] Direct Written Order to report to Investigative Service at 10:00 am on Monday June 25th 2018. You failed to appear as ordered.

> This action represents a violation of *Corrections Services Employee Manual* Rule 7, **FAILURE TO FOLLOW ORDERS - AGGRAVATED**: which states, "Direct written or verbal orders must be obeyed cooperatively and promptly. When orders conflict, the last order received must be obeyed."

> The VR-1 dated June 25, 2018 has been administratively reviewed and you have been recommended for dismissal from your employment. You may submit a written response to these charges and this recommendation of dismissal to my attention by the close of business on **August 8, 2018.** ... Your failure to respond will be viewed as a waiver of your right to respond and will result in immediate processing of the recommended action.

4

According to the LSP's proof of mailing, this letter, which was also sent to the same address that the previous letters were mailed to, was mailed by LSP to Sergeant Pree on July 31, 2018.

Again, Sergeant Pree denied receiving the letter. Sergeant Pree added that it was not possible that anyone else could have gotten the letter out of the mail because she had communicated with her daughter not to check the mail. When asked why she did not initiate any contact with DPSC to determine her employment status, Sergeant Pree stated, "I was waiting on them to contact me. They put me on leave." She also maintained her confusion with the orders that had been given.

The final letter mailed to Sergeant Pree was her termination letter dated August 30, 2018, wherein Sergeant Pree was notified that she would be separated from her position with LSP effective September 7, 2018. The letter also advised Sergeant Pree of her right to appeal to the State Civil Service Commission. The proof of mailing indicates the letter was mailed to Sergeant Pree at the Cannonburg Road address on August 30, 2018. According to the record, Sergeant Pree received the August 30, 2018 letter on September 3, 2018, and her appeal to the Commission followed. In her appeal to the Commission, Sergeant Pree argued that she did not violate any DPSC rules and that she was never provided with the VR-1 nor afforded an opportunity to respond thereto. She further asserted that the decision is arbitrary and capricious and that the punishment is excessive and not based on the merits.

On August 16, 2019, a public hearing was held before a referee appointed by the Commission. In a decision dated October 14, 2019, the referee reversed Sergeant Pree's termination, finding that there was no evidence to contradict Sergeant Pree's assertion that she did not receive the July 31, 2018 pre-disciplinary letter. Thus, the referee concluded, Sergeant Pree successfully rebutted the

5

presumption of delivery established by Civil Service Rule 12.8.1(c), and DPSC failed to meet its burden.[1] The referee ordered that all documents concerning Sergeant Pree's termination be removed from her personnel file and ordered DPSC to pay her back wages, with legal interest. The referee further awarded attorney fees in the amount of $1,500.00 to Sergeant Pree, finding DPSC's actions to be unreasonable.

Thereafter, DPSC filed with the Commission an application for review of the referee's decision. On February 5, 2020, the Commission reversed the decision of the referee, thereby upholding the termination of Sergeant Pree's employment in accordance with the August 30, 2018 termination letter.

This appeal by Sergeant Pree followed, wherein Sergeant Pree assigns the following specifications of error:

1. The Commission erred by reversing the Civil Service Referee's Decision on October 14, 2019.

2. The Commission erred by finding DPSC proved "cause" to terminate [Sergeant] Pree by a preponderance of the evidence.

3. The Commission erred by finding [Sergeant] Pree received the June 15, 2018, order and failed to appear.

4. The Commission erred by finding [Sergeant] Pree received the July 31, 2018, notice of proposed discipline.

5. The Commission erred by finding [Sergeant] Pree had a reasonable opportunity to respond prior to her termination.

6. The Commission erred by finding [Sergeant] Pree did not rebut the presumption of receipt set forth in Civil Service Rule 12.8.1.

---

[1] Civil Service Rule 12.8.1 provides as follows:

Written notice is considered given

(a) when it is hand delivered to the employee or

(b) when it is hand delivered to a person of suitable age and discretion who resides with the employee or

(c) on the 7th calendar day after it was mailed with correct postage to the employee's most recent address furnished in writing or electronically to the agency's human resource office.

7. The Commission erred by failing to find that [Sergeant] Pree's termination was in violation of her Constitutional Rights to Due Process and Civil Service Rule 12.7.

8. The Commission erred by failing to find that [Sergeant] Pree's dismissal was not commensurate with the alleged offense.

## REVIEW OF THE COMMISSION'S DECISION

Under La. Const. art. 10, §12(A), the Commission has the exclusive power and authority to hear and decide all removal and disciplinary cases, and the Commission may appoint a referee to take such testimony, hear, and decide such cases. The decision of a referee is subject to review by the Commission on any question of law or fact upon the filing of a timely application for review with the Commission. La. Const. art. 10, §12(A). Civil Service Rule 13.36(f) provides that, after the Commission considers the application for review, along with the pleadings and exhibits, it may do any of the following:

1. Remand the appeal with instructions to the referee; or
2. Hold new hearings or take additional evidence or both, and render its own decision thereon.
3. Reverse or modify the Referee's decision on an issue of law.
4. Affirm the Referee's decision by denying the application for review.
5. Listen to pertinent portions of the sound recordings of the proceedings conducted before the Referee or read and review the transcript of the proceedings before the Referee, and, thereafter, reverse or modify the Referee's decision on an issue of fact, and/or take any of the actions specified in 1 through 4 above.

This court has previously held that it is the Commission, not an appellate court, that is the proper party to determine whether a standard of review should be applicable when the Civil Service Commission reviews a decision of a referee. **Burst v. Board of Comm'rs, Port of New Orleans,** 93-2069 (La. App. 1 Cir. 10/7/94), 646 So.2d 955, 957-958, writ not considered, 95-0265 (La. 3/24/95), 651 So.2d 284. In **Wheeler v. Department of Public Safety and Corrections, Washington Correctional Institute,** 544 So.2d 66, 67 (La. App. 1 Cir. 1989), this court stated:

7

La. Const. art. 10, §12(A) grants to the State Civil Service Commission the "exclusive power and authority to hear and decide all removal and disciplinary cases...." As an aid in the performance of its constitutional "power and authority," the Commission is authorized to appoint "a referee, with subpoena power and power to administer oaths, to take testimony, hear, and decide removal and disciplinary cases." The constitution further provides that the decision of the referee is subject to review by the Commission on any question of law or fact.

The constitution does not provide for a standard of review for the Commission when reviewing decisions of a referee. Appellant suggests in argument that we impose a standard of review on the Commission. However, inasmuch as the State Civil Service Commission is created by the constitution and has the authority to adopt rules which have the effect of law, La. Const. art. 10, §10(A)(4), we conclude that the Commission is the proper party to determine if a standard of review should be applicable.

A classified employee subjected to disciplinary action shall have the right to appeal, and the burden of proof on appeal to the Commission, as to the facts, shall be on the appointing authority. See La. Const. art. 10, §8(A). The appointing authority's burden is to prove its case by a preponderance of the evidence. **Shortess v. Department of Public Safety and Corrections**, 2006-1532 (La. App. 1 Cir. 5/28/08), 991 So.2d 1067, 1071. However, once that burden is met and disciplinary action is imposed, the state employee bears the burden of proving his dismissal (or other action) was arbitrary or capricious. *Id.*

In reviewing a Commission decision, a court of appeal owes great deference to the factual determinations of the Commission, and an appellate court will not overturn those determinations in the absence of clear or manifest error. Also, when evaluating the Commission's determination as to whether the appointing authority's disciplinary action is commensurate with the infraction, an appellate court should not modify the Commission's order unless it is arbitrary, capricious, or an abuse of discretion. See **Bannister v. Department of Streets**, 95-0404 (La. 1/16/96), 666 So.2d 641, 647. "Arbitrary or capricious" means the absence of a rational basis in the record for the action taken. *Id.* In other words, disciplinary action will be

8

deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of the public service. *Id.*

No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. La. Const. art. 10, Sec. 8(A). "Cause" for the dismissal of such an employee includes conduct prejudicial to the public service involved or detrimental to its efficient operation. Thus, the employer must prove by a preponderance of the evidence that the employee's conduct did, in fact, impair the efficiency and operation of the public service in which the employee is engaged. **Shortess**, 991 So.2d at 1071.

In addition to having to show legal cause sufficient to warrant disciplinary action, the Commission also must impose disciplinary action commensurate with the infraction. **Shortess**, 991 So.2d at 1072-1073. Dismissal from permanent employment is obviously the most extreme form of disciplinary action that can be taken against a classified state employee; thus, cause that may justify some other lesser form of disciplinary action may not justify a dismissal. **Bailey v. Department of Public Safety and Corrections**, 2005-2474 (La. App. 1 Cir. 12/6/06), 951 So.2d 234, 240 (quoting **Department of Public Safety and Corrections, Office of State Police v. Mensman**, 95-1950 (La. 4/8/96), 671 So.2d 319, 321).

As previously indicated, several witnesses testified during the August 16, 2019 public hearing before the referee in this matter, including Sergeant Pree. After granting DPSC's application for review of the referee's decision, the Commission "reviewed the record and listened to pertinent portions of the sound recording of the [August 16, 2019] proceedings," before rendering an opinion on February 5, 2020, reversing the decision of the referee and maintaining Sergeant Pree's termination in accordance with the August 30, 2018 termination letter.

The Commission found that based on her testimony, it was clear that Sergeant Pree had no interest in participating in an investigation at LSP. With regard to Sergeant Pree's testimony concerning the letters, the Commission concluded that the referee erred in finding Sergeant Pree did not receive either the June 15, 2018 letter or the July 31, 2018 letter. The Commission further concluded:

> We conclude that the Referee erred in accepting as credible [Sergeant] Pree's self-serving testimony that the [June 15, 2018] letter was not really mailed or, if it was, that she did not receive it. The letter was properly mailed to her with proof of mailing from the U.S. Post Office at Angola. She admitted receiving letters dated May 31, 2018 and August 30, 2018 related to this case and mailed to her at the same address. It was clearly not in [Sergeant] Pree's interest to admit receipt of the letter containing the direct order, as it advised her that failure to comply may result in possible disciplinary action up to termination. There is no difference between [Sergeant] Pree's self-serving testimony in this instance and other self-serving testimony previously rejected by this and other Referees.

> By letter dated July 31, 2018 mailed with a certificate of mailing from LSP, LSP sent a pre-deprivation notice to [Sergeant] Pree proposing her termination. [Sergeant] Pree did not respond. The Referee found as a matter of fact that [Sergeant] Pree did not receive the letter. ... In this finding, we conclude that the Referee erred. Civil Service Rule 12.8.1 is applicable to this letter and reads:

> "Written notice is considered given
> . . . .
> (c) on the 7th calendar day after it was mailed with correct postage to the employee's most recent address furnished in writing or electronically to the agency's human resource office."

> The Referee reasoned that although LSP was entitled to a presumption of receipt under Rule 12.8.1(c), [Sergeant] Pree overcame the presumption by "positive evidence of lack of delivery or receipt", writing:

> "[Sergeant] Pree testified that she never received a copy of the pre-deprivation letter. I believed her. [Sergeant] Pree was genuinely perplexed as to what order [DPSC] was talking about when she received the dismissal letter and filed her appeal. Further, there is no evidence to contradict [Sergeant] Pree's assertion that she did not receive the letter. I conclude that [Sergeant] Pree successfully rebutted the presumption of delivery

10

established by CSR 12.8.1(c). Such being the case, LSP failed to meet its burden."

It is our opinion that [Sergeant] Pree's self-serving testimony that she personally checked her mail daily and did not receive the letter falls woefully short of being "positive evidence of lack of delivery or receipt" in light of the presumption in favor of the agency and indisputably correct mailing of the letter in accordance with Rule 12.8.1 as evidenced by Exhibits DOC 6 and DOC 7. [Footnotes omitted.]

After a thorough review of the record before us, we find no manifest error by the Commission. As such, we decline to disturb its findings of fact. Further, as to Sergeant Pree's termination, we agree with the Commission that Sergeant Pree's failure to follow orders cannot be tolerated and that Sergeant Pree's termination was commensurate with the offense. Because the record provides a rational basis for the Commission's decision, we conclude its determination is not arbitrary, capricious, or characterized by an abuse of discretion. Accordingly, we affirm the Commission's decision reversing the decision of the referee and upholding Sergeant Pree's termination.

## CONCLUSION

For the above and foregoing reasons, we affirm the February 5, 2020 decision of the Louisiana State Civil Service Commission. We assess all costs associated with this appeal against appellant, Tracy Pree.

**AFFIRMED.**